In re Margaret KENDERDINE, Debtor.

Margaret KENDERDINE, Plaintiff,

v.

POLONIA FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant.

Bankruptcy No. 89–13356S.
Adv. No. 90–0450S.

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 27, 1990.

---

Eric L. Frank, Community Legal Services, Inc., Philadelphia, Pa., for plaintiff-debtor.

Edward Sparkman, Philadelphia, Pa., Standing Trustee.

Leon A. Manakowski, Philadelphia, Pa., for defendant.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

A. INTRODUCTION

The instant adversary proceeding consists of Objections of a plaintiff-debtor, MARGARET A. KENDERDINE ("the Debtor"), to a "claim" for arrears on an obligation secured by a mortgage on the Debtor's home held by the Defendant, POLONIA FEDERAL SAVINGS AND LOAN ASSOCIATION ("the Defendant"). One aspect of the Objections, seeking a $1,000 recoupment of statutory damages in light of the Defendant's two separate violations of the federal Truth in Lending Act, 15 U.S.C. § 1601, et seq. ("TILA"), by the Defendant in writing the loan, is easily resolved in the Debtor's favor on the basis of ample precedent. The other aspect, seeking recoupment of treble damages in light of the Defendant's charge of excessive interest in the loan transaction, in violation of Act 6 of 1974 ("Act 6"), 41 P.S. § 301(b), is considerably more novel and more difficult to resolve. In reference to this claim, we conclude that, while the Defendant is barred from charging excessive interest under 41 P.S. § 501 of Act 6, the Debtor had not, as of the time of suit, paid any excess interest to the Defendant, such as would trigger the treble-damage penalties set forth in 41 P.S. § 502 of Act 6. Therefore, the only real damages flowing to the Debtor on the claim are an award of

her reasonable attorney's fees under 41 P.S. § 503 of Act 6, which are concurrent with a similar remedy available to the Debtor under 15 U.S.C. § 1640(a)(3) of the TILA.

## B. PROCEDURAL AND FACTUAL SETTING

The Debtor filed the underlying voluntary Chapter 13 bankruptcy case on September 12, 1989. The confirmation hearing, originally scheduled on May 15, 1990, has been continued for the fourth time until September 6, 1990, due to the apparent need for this proceeding to be resolved before confirmation can occur.

The instant proceeding was commenced on June 5, 1990. It came before us for trial on July 19, 1990. At that time, the Debtor presented us with a Trial Memorandum, attached to which were a Stipulation of Facts between the parties and several other documents admitted into the record, and rested. The Defendant indicated a desire to call the Debtor as its witness, but she was not present. At the request of the Defendant's counsel, we allowed him to conduct, file, and serve a transcript of a deposition of the Debtor to complete the record on or before August 9, 1990. We allowed the Defendant until August 23, 1990, to file its Brief, and the Debtor until August 28, 1990, to file a Reply Brief. Upon advice that the parties wished to move back the filing schedule to accommodate a vacation of the Debtor's counsel beginning on August 27, 1990, this court, in an Order of August 10, 1990, moved up the dates for filing Briefs to August 20, 1990 (the Defendant), and August 24, 1990 (the Debtor), in order hopefully to avoid continuing the September 6, 1990, confirmation hearing again, as this case is approaching its first anniversary without confirmation.

The transaction underlying this controversy was a loan made by the Defendant to the Debtor in the principal amount of $10,000, evidenced by a Mortgage, Note, and TILA Disclosure Statement ("the D/S") of March 28, 1983. The D/S fails to recite that any security in the Debtor's property was taken by the Defendant in the transaction, and is accompanied by a "Notice of Right to Cancel" designating March 23, 1983, as the date of the loan and March 28, 1983, as the date when the Debtor's right to rescind the loan under 15 U.S.C. § 1635 expires. The Note recites an interest rate of 13½ percent and discloses the Annual Percentage Rate ("APR") of the Finance Charge in the transaction as 13¾ percent. The term for repayment of the loan is 12 years. Monthly payments of $140.58 are required to liquidate the balance. The total Finance Charge is disclosed as $10,458.31.

Payments began, per the parties' contract, on May 1, 1983. The Debtor paid, somewhat irregularly, an amount totalling about 41 payments, through November 6, 1986. The Debtor claims that the payments total $5,763.78. Since the Defendant did not contest this figure, we will adopt it. The Debtor had apparently not made any payments directly to the Defendant between November 6, 1986, and the date that she filed bankruptcy almost three years later.

The Debtor's Second Amended Plan ("the Plan"), filed June 14, 1990, contemplates that post-petition payments due to the Defendant will be made directly to it, apparently including an escrow for taxes, in the amount of $177 monthly. The payments contemplated to be made to the Trustee are $30 for the first 12 months, $100 for the next 12 months, and $203 for the final 36 months. It is anticipated that the funds in the hands of the Trustee will be used to pay off pre-petition arrearages owed to the Defendant; a settlement of a secured claim of $3,030.05 owed to a second mortgagee; a small secured claim of the City of Philadelphia for water and sewer service; and the balance, if any, is to be distributed pro rata to unsecured creditors. Since no motions to dismiss or for relief from the automatic stay have been filed by the Trustee or the Defendant, respectively, we assume that the Debtor has been making the payments called for by the Plan.

On March 1, 1990, the Defendant filed a Proof of Claim for mortgage arrearages of

$5,648.26. It is this Proof of Claim which is under attack in this proceeding.

At her deposition, the Debtor stated that she was unaware and probably unconcerned about the interest rate charged in the transaction. She also was obviously unaware that the maximum legal "floating" interest rate chargeable at the time of her loan pursuant to 41 P.S. § 301(b) was 12¾ percent, not 13½ percent. At the deposition and in its Answer, the Defendant produced a letter sent to the Debtor in September, 1984, reducing her monthly payment by $4.72 monthly and refunding $11.72 to her. No reason for this reduction and refund is set forth in the letter. The lack of testimony from any agents of the Defendant makes it unclear why or how the excess interest rate of 13½ percent was charged and renders the record absent of any explanation of the Defendant's motivation for the dispatch of the September, 1984, letter.

Applicable APR Tables indicate that the interest chargeable on a loan in which the APR is 12¾ percent, per $100 borrowed on a 144–month loan, is $95.72, or should result in a Finance Charge of $9,572.00 in a $10,000 loan. The Finance Charge actually imposed in this transaction was $10,458.31. The difference between these two charges, or the excess interest projected to be charged to the Debtor by the Defendant is therefore $10,458.31 less $9,572, or $886.31. The difference would be about $6.15 monthly over a 144–month term. We note that these figures do not quite support the Defendant's argument that the letter of September, 1984, corrected the charge of excess interest, because the amount of change in the payment effected by the correction was insufficient.

C. THE DEBTOR IS CLEARLY ENTITLED TO A RECOUPMENT OF $1,000 AGAINST THE DEFENDANT'S CLAIM IN LIGHT OF THE PRESENCE OF TWO SEPARATE ACTIONABLE TILA VIOLATIONS IN THE LOAN TRANSACTION.

■ The Debtor alleges that there are three discrete TILA violations in the loan documents supplied to her by the Defendant in the instant loan transaction. Firstly, she points to the failure of the Defendant to recite, in the D/S, that any security interest has been taken against the Debtor's home by the Defendant, which of course was in fact taken in the form of the Mortgage. This deficiency clearly violates the requirement set forth in 15 U.S.C. § 1638(a)(9) and 12 C.F.R. § 226.18(m) that a statement that a security interest has been taken in the transaction must be included in a TILA D/S.

■ Secondly, she references the error in the Notice of the Right to Cancel, which mistakenly identifies the date of the loan as the date when the right to rescind expires. That such an error violated 15 U.S.C. § 1635(a) and 12 C.F.R. § 226.23(b)(5) is noted in *Semar v. Platte Valley Federal Savings & Loan Ass'n,* 791 F.2d 699, 701–02 (9th Cir.1986); and *Aquino v. Public Finance Consumer Discount Co.,* 606 F.Supp. 504, 507 (E.D.Pa.1985).

■ Thirdly, the Debtor claims that the APR was incorrectly disclosed, attaching the pertinent APR Tables. However, our review of those very Tables indicates that the Finance Charge of $10,458.31, or $104.58 per $100 borrowed, actually computed to an APR of about 13.65 percent, not 13.99 percent as the Debtor inexplicably contends. Thus, the deviation is about ⅒ percent and the APR is overstated, rather than, as the Debtor claims, understated by more than ⅛ percent. Therefore, the discrepancy is actually within the ⅛ percent deviation permitted under the applicable TILA Regulations. *See* 12 C.F.R. § 226.22(a)(2).

■ Consequently, we conclude that only the first two of the three TILA violations alleged by the Debtor have merit. However, either of these meritorious violations are sufficient to give rise to statutory damages of $1,000, *see* 15 U.S.C. §§ 1640(a)(2)(A)(i), (a)(3), although only one recovery of such damages is permissible despite the presence of multiple violations. 15 U.S.C. § 1640(g).

■ The Defendant does not dispute the validity of any of the three alleged TILA violations. Rather, it argues only that the Debtor's claim is time-barred pursuant to the one-year statute of limitations appearing in 12 U.S.C. § 2614. The only case cited in its Brief is *Hardin v. City Title & Escrow Co.*, 797 F.2d 1037 (D.C.Cir. 1986), which is invoked in support of this principle.

*Hardin* is, however, a case instituted under the federal Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, et seq. ("RESPA"), *not* under the TILA. This distinction is significant. The TILA does, like RESPA, contain a one-year statute of limitation which is similar to that contained in 12 U.S.C. § 2614 of RESPA. *See* 15 U.S.C. § 1640(e). This significance of the difference arises because 15 U.S.C. § 1640(e), unlike 12 U.S.C. § 2614, further provides that

> [t]his subsection does not bar a person from asserting a violation of this title in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law.

The right of a debtor in bankruptcy to invoke the doctrine of recoupment, as authorized by 15 U.S.C. § 1640(e), to reduce a secured proof of claim of a mortgage lender by the amount of statutory TILA damages has been recognized again and again in cases decided by the district court of which this court is a unit and by this court itself. *See, e.g., Gambale v. Lomas & Nettleton Co.,* 80 B.R. 308 (E.D.Pa.1987) (KATZ, J.); *Werts v. Federal National Mortgage Ass'n,* 48 B.R. 980, 983–84 (E.D. Pa.1985) (LORD, CH. J.); *In re Bender,* 86 B.R. 809, 816 (Bankr.E.D.Pa.1988) (FOX, J.); *In re Dangler,* 75 B.R. 931, 935–37 (Bankr.E.D.Pa.1987); and *In re Hanna,* 31

B.R. 424, 425–26 (Bankr. E.D.Pa.1983) (GOLDHABER, CH. J.)

The Debtor is therefore entitled to assert a $1,000 TILA recoupment against the Defendant irrespective of the fact that seven years has passed since the loan transaction was ·consummated in 1983.[1] In addition, she is entitled to recover reasonable attorney's fees on behalf of her counsel for prosecuting this claim. *See* 15 U.S.C. § 1640(a)(3).

D. **THE DEBTOR IS ENTITLED TO ONLY A DETERMINATION THAT THE DEFENDANT IS NOT PERMITTED TO COLLECT EXCESS INTEREST AND AN AWARD OF REASONABLE ATTORNEY'S FEES AS A RESULT OF THE DEFENDANT'S VIOLATIONS OF ACT 6, BUT NOT TO THE TREBLE DAMAGES THAT SHE SEEKS, BECAUSE NO EXCESS INTEREST WAS IN FACT PAID TO THE DEFENDANT BY HER.**

■ There is little doubt that the Defendant's imposition of an interest rate of at least 13½ percent is violative of 41 P.S. §§ 301(b), (c), (e), which provide that the maximum fixed rate of a mortgage must conform to a figure published monthly by the Pennsylvania Secretary of Banking ("the Secretary") which varies depending upon the monthly index of federal bond yields. The figure published by the Secretary in March, 1983, was 12¾ percent.

■ The Defendant asserts three defenses to the claim of usury, all of which are very weak and undeveloped. Firstly, it asserts that the loan was "federally guaranteed" and therefore exempt from the scope of 41 P.S. § 301 by the terms of 41 P.S. § 302. However, 41 P.S. § 302 specifically references only a ·

> loan insured or guaranteed in whole or in part by the Federal Housing Administration, the Veterans Administration or any

---

1. The Debtor's delay in asserting her rights under TILA is not without adverse consequences to her, however. The fact that over three years has passed since the loan transaction occurred eliminated the Debtor's right to rescind the transaction. *See* 15 U.S.C. § 1635(f). The con-

sequences of a successful rescission are· far more serious than the imposition of a mere $1,000 recoupment against the creditor's claim. *See, e.g., In re Brown,* 106 B.R. 852, 861–63 (Bankr.E.D.Pa.1989).

other department or agency of the United States Government: . . .

The Defendant's claim of a federal guarantee arises from its specious argument the federal savings and loan "bail out" places every loan by such an institution within the scope of 41 P.S. § 302. We readily reject this contention.

■ Secondly, the Defendant appears to argue that the Debtor's ignorance of the usury occurring in the loan transaction is relevant, which was the principal reason articulated for its desire to take the Debtor's deposition. However, it is well-established that a borrower cannot waive a claim of usury. *See* 41 P.S. § 408; *Simpson v. Penn Discount Corp.*, 335 Pa. 172, 175–76, 5 A.2d 796, 798 (1939); and *Gilbert v. Otterson*, 379 Pa.Super. 481, 486–87, 550 A.2d 550, 553 (1988). Therefore, the Debtor's knowledge or ignorance of the Defendant's usury is irrelevant to her rights to damages under 41 P.S. § 503.

■ The final defense is that the Debtor's claim of damages is barred by the statute of limitations contained in 41 P.S. § 502. This statutory provision will be discussed in greater detail at pages 264–66 *infra.* However, at this point, it is appropriate to note that the nature of this claim of the Debtor is, like her TILA claim, in the nature of a recoupment against the Proof of Claim of the Defendant. As the Supreme Court of Pennsylvania pointed out in a decision interpreting the TILA which predated the enactment of 15 U.S.C. § 1640(e), a recoupment claim may generally be asserted despite the running of the statute of limitations as to that claim, if asserted as an affirmative cause of action. *Household Consumer Discount Co. v. Vespaziani*, 490 Pa. 209, 216–24, 415 A.2d 689, 693–97 (1980). *Accord, e.g., Bull v. United States*, 295 U.S. 247, 262, 55 S.Ct. 695, 700, 79 L.Ed. 1421 (1934); and *Dangler, supra*, 75 B.R. at 936–37. Although Act 6 is a state law, requiring resort to the state law of recoupment rather than the comparable federal law, there is no reason to expect that the result should be or is any different. *See Vespaziani, supra*, 490 Pa.

at 224, 415 A.2d at 697 (Roberts, J., conc. op.).

We therefore have little doubt that the Defendant violated the usury provisions of Act 6 in writing this loan. The difficult issue is determining what consequences flow as a result. The pertinent sections of Act 6 which set forth the remedies to borrowers who are subjected to charges of usurious interest are set forth in 41 P.S. §§ 501, 502 of Act 6 as follows:

**§ 501.  Excessive Interest need not be paid**

When a rate of interest for the loan or use of money, exceeding that provided by this act or otherwise by law shall have been reserved or contracted for, the borrower or debtor shall not be required to pay to the creditor the excess over such maximum interest rate and it shall be lawful for such borrower or debtor, at his option, to retain and deduct such excess from the amount of such debt providing the borrower or debtor gives notice of the asserted excess to the creditor.

**§ 502.  Usury and excess charges recoverable**

A person who has paid a rate of interest for the loan or use of money at a rate in excess of that provided for by this act or otherwise by law or has paid charges prohibited or in excess of those allowed by this act or otherwise by law may recover triple the amount of such excess interest or charges in a suit at law against the person who has collected such excess interest or charges: Provided, That no action to recover such excess shall be sustained in any court of this Commonwealth unless · the same shall have been commenced within four years from and after the time of such payment. Recovery of triple the amount of such excess interest or charges, but not the actual amount of such excess interest or charges,. shall be limited to a four-year period of the contract.

■ We have little doubt that, by the terms of 41 P.S. § 501, the Defendant is precluded from charging any excess interest to the Debtor. However, we have

considerable doubt about the validity of the Debtor's argument that she is entitled to damages of $4,091.70 under 41 P.S. § 502 as a result. We quote from the reasoning supporting this result proffered in the Debtor's Trial Memorandum in Support of Objection to Claim of Polonia Federal Savings & Loan Association, at 9–10:

> As set forth in Appendix V [wherein the Debtor constructs a "corrected" amortization table applying an interest rate of 12¾ percent to the loan terms], the principal balance after 41 payments, using the corrected, "legal" interest rate, should have been $8,247.23. Thus, from the $5,763.78 debtor paid Polonia,[7] $1,752.77 [sic—the figure is $1,752.65][8] should have been applied to principal and $4,011.01[9] should have been applied to interest on the loan.
>
> Polonia's statement of account ... reveals that the principal balance as of November 1986 was $9,611.13. This exceeds the proper principal balance by $1,363.90. Thus, Polonia applied $1,363.90 of debtor's payments to interest or other charges rather than principal.[10] This violated Act 6 and renders Polonia liable for treble damages under 41 P.S. § 502.
>
> Based on the foregoing, the court should reduce Polonia's arrearage claim by three time the excess interest or other charges assessed. That amount is $4,091.70.

---

7. $140.58 (monthly payment) × 41 (number of payments made) = $5,763.78.

8. $10,000 (original principal amount) minus $8,247.35 (correct principal balance after 41 payments) = $1,752.65 (amount of payments applied to principal).

9. $5,763.78 (total paid) minus $1,752.77 [sic] (amount which should have been applied to principal) = $4,011.01 (amount which should have been applied to interest).

10. Certainly, at least some of the $1,363.90 is attributable to the usurious interest rate Polonia charges. While Polonia's payment ledger is not altogether clear, it appears that Polonia had a practice of "capitalizing" (*i.e.,* adding to principal) amounts owed due to escrow advances or late payments. This violates Act 6's requirement that curing a delinquency and reinstating a mortgage "restores the residential mortgage debtor to the same position as if the default had not occurred." 41 P.S. § 404(c).

At a minimum, the analysis in the text above establishes a prima facie case that Polonia assessed unlawful interest or other charges and shifts the burden to Polonia to demonstrate that its application of debtor's payments was proper. *See generally In re Russell,* 72 B.R. 855 (Bankr. E.D.Pa.1987).

Intuitively, it seems very questionable to conclude that, after 41 payments, the Debtor has overpaid interest legally chargeable by $1,363.90, when, as we pointed out at page 262 *supra,* the difference between the interest charged by the Defendant and the legal rate of interest over the entire course of the loan is only $886.31. It is therefore obvious that not all of the difference of $1,363.90 in the balance claimed by the Defendant and the amount which is due under the "corrected" amortization calculations of the Debtor is attributable to excess interest. Also, the efforts of the Defendant to correct the monthly payment, while perhaps inadequate to eliminate the excess, should have reduced the difference to less than $886.31.

There is very little authority describing the operation of 41 P.S. § 502. Except for passages in two Opinions of this court, *In re Stewart,* 93 B.R. 878, 886–87 (Bankr.E. D.Pa.1988); and *In re Russell,* 72 B.R. 855, 864–65, 869–70 (Bankr.E.D.Pa.1987), the only other case construing this statutory provision of which we are aware is *Trent Financial Corp. v. Church,* 12 Pa.D. & C.3d 451, 453 (Pa.Com.Pl.1978), which we followed in *Russell, supra,* 72 B.R. at 869–70.

In *Church,* the court deducted the interest paid by the debtor at the time of suit from the lawful amount of interest chargeable over the entire period of the loan and trebled the difference to ascertain the debtor's damages. The resulting difference was then deducted, in the nature of recoupment, from the balance remaining on the loan. *Id.* at 453.

In *Russell,* we followed the same approach as did the *Church* court. However, in *Russell* a problem arose in measuring how much of the debtor's total payments on the loan obligation in issue of $5,118.00 were attributable to interest. In resolving this issue, we observed that, due to that

particular defendant's appendage of $1,490 in undisclosed additional charges, 72 B.R. at 864 (not an issue here), as well as its charging of interest at an APR of 33.7, about six percent in excess of that legally allowable, *id.* at 859 (in contrast to the ¾ percent error in the rate of interest charged here), the alleged principal balance of the loan ($5,639.39) was well in excess of the amount of principal actually borrowed ($5,510) at the time of the filing of the defendant's proof of claim. *Id.* at 870. Therefore, we attributed *all* of the $5,118.00 amount paid by the debtor on the loan to interest. *Id.* We then deducted the legally allowable finance charges ($2,288.05) over the entire period of the loan from the $5,118.00 of interest payments to compute the excess interest ($2,829.95). *Id.* Finally, we trebled that figure to arrive at the debtor's valid recoupment/damage claim under 41 P.S. § 502 of $8,489.55. *Id.* at 870, 873.

In addressing an Act 6 violation claim in *Stewart,* we computed the amount of the debtor's payments which we attributed to interest at $273.66. 93 B.R. at 886. We then estimated the legally allowable finance charges in the entire transaction as falling within a range between $262.40 and $296.95. *Id.* at 887. Since the legally allowable finance charge equalled or exceeded the debtor's payments attributable to interest, we concluded that the debtor had not proven the payment of any excess interest and disallowed him any claim under 41 P.S. § 502. *Id.*

Application of the same formula as was utilized in *Church, Russell,* and *Stewart* yields the same result which was attained in *Stewart, i.e.,* that no excess interest was paid by the Debtor as of the time of the institution of the instant proceeding. Therefore, no damages under 41 P.S. § 502 are triggered.

Assuming *arguendo* that the Debtor is correct in claiming that all or most of her alleged total of payments of $5,763.78 are attributable to interest (a balance of $9,611.13 indicates that at least $388.87 was paid to something other than interest, *e.g.,* principal), see page 264–65 *supra,* this payment sum does not approach the total finance charge of $9,572.00 which could permissibly be charged in the transaction. Therefore, even if we shift the burden to the Defendant to prove the allocation of the Debtor's payments to interest or to other charges, as the Debtor contends that we did in *Russell,* 72 B.R. at 870, it is clear that no "excess interest" has as of yet been paid by the Debtor. Therefore, the Debtor is not entitled to recover any damages under 41 P.S. § 502.[2]

Remaining as an issue is whether the Debtor, having failed to convince us that she is entitled to any damages under 41 P.S. § 502, is nevertheless entitled to reasonable attorney's fees under 41 P.S. § 503(a), which reads as follows:

**§ 503. Reasonable attorney's fees recoverable**

(a) If a borrower or debtor, including but not limited to a residential mortgage debtor, prevails in an action arising under this act, he shall recover the aggregate amount of costs and expenses determined by the court to have been reasonably incurred on his behalf in connection with the prosecution of such action, together with a reasonable amount for attorney's fee.

Although we find it a very close question, we conclude that the Debtor is entitled to attorney's fees under 41 P.S. § 503 on the basis of two authorities, *Smith v. Kissell Co.,* 98 B.R. 708 (E.D.Pa.1989); and *Gardner v. Clark,* 349 Pa.Super. 297, 503 A.2d 8 (1986).

In *Gardner,* the court emphasizes that the fact that the borrower prevailed in procuring only part of the relief sought under Act 6 nevertheless justifies a recovery under 41 P.S. § 503. 349 Pa.Super. at 301–02, 503 A.2d at 10. It also supports the

---

**2.** Where the Debtor's reasoning conflicts with that of *Church, Russell,* and *Stewart* philosophically is in her contention that excess interest paid as of the first 41 months of the loan can serve as the basis for damages under 41 P.S.

§ 502. We believe that it is only interest in excess of that legally allowable under the full term of the contract (here 144 months) which gives rise to damages under 41 P.S. § 502.

conclusion that an order of the court actually granting relief under the Act is not a prerequisite for such a recovery. *Id.* Here, while we reject the Debtor's claim for recoupment under 41 P.S. § 502 and we are unable to enter any order granting the Debtor relief under Act 6, we do conclude, over the Defendant's opposition, that the loan terms were usurious and that, under 41 P.S. § 501, interest in excess of that allowable under 41 P.S. § 301(b) may not be charged to the Debtor. At some point in the future, although not in the process of reducing the amount of the Defendant's outstanding instant Proof of Claim filed in this bankruptcy case, this conclusion will have financial consequences for both parties.

*Smith* appears to hold that a trial court is without discretion to deny an application for reasonable attorney's fees under 41 P.S. § 503, even when the direct relationship of the claim in which the borrower prevails to Act 6 is questionable. Here, certainly, there is a closer relationship between our holding that the Defendant acted in violation of 41 P.S. § 501 and Act 6 than in the case of the Debtor's claim found sufficient to give rise to damages under 41 P.S. § 503 in *Smith.* Therefore, per *Smith,* an award of attorneys' fees under 41 P.S. § 503 is mandated. Considered together with our holding that 15 U.S.C. § 1640(a)(3) authorizes the payment of attorney's fees in connection with the TILA aspect of the proceeding results in a conclusion that the Debtor is entitled to attorneys' fees from the Defendant for all of the time spent by the Debtor's counsel on all aspects of the proceeding.

### E.   CONCLUSION

For all of the reasons set forth in this Opinion, we are obliged to enter an Order reducing the Defendant's "claim" for arrearages by $1,000 to $4,648.26 and awarding the Debtor reasonable attorney's fees under 15 U.S.C. § 1640(a)(3) and 41 P.S. § 503, the precise amount of which will be ascertained by (hopefully) agreement of the parties or further order after the filing of a detailed Application by the Debtor's counsel.