**In the Matter of Ruth GRIGSBY.**

**Ruth GRIGSBY**

v.

**THORP CONSUMER DISCOUNT CO. d/b/a ITT Financial Services.**

**Civ. A. No. 91–0442.**

United States District Court, E.D. Pennsylvania.

May 15, 1991.

Gary Klein, Eric L. Frank, Community Legal Services, Inc., Philadelphia, Pa., for Ruby Grigsby.

Edward Sparkman, pro se.

Andrew Markowitz, Lahaska, Pa., for Thorp Consumer Discount Co.

## MEMORANDUM

O'NEILL, District Judge.

### I. *Introduction.*

This is a bankruptcy appeal. The debtor, Ruth Grigsby, brought an adversary proceeding in the bankruptcy court against defendant ITT Financial Services, an obligee on a mortgage contract with the debtor. The debtor apparently believed that ITT might file a proof of claim against her on the mortgage contract in her individual Chapter 13 bankruptcy case. She sought a determination that she could rescind the mortgage contract as a result of ITT's alleged violations of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.,* and that she could recover damages from ITT under Act 6 of 1974 of the Pennsylvania Statutes, 41 P.S. § 101, *et seq.,* and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1, *et seq.* (generically referred to as "UDAP") as a result of ITT's allegedly usurious imposition of finance charges.

The bankruptcy court held that ITT had not violated the Truth in Lending Act. *In re Grigsby,* 119 B.R. 479, 484–89 (Bkrtcy.E. D.Pa.1990). The court also held that ITT

charged the debtor a usurious rate of interest on the mortgage loan. *Id.*, at 493. The court reformed the loan instrument to reflect the legal rate of interest, but declined to award the debtor the damages she claimed under 41 P.S. § 502. *Id.* Because the debtor had shown no damages under section 502, the bankruptcy court declined to address the debtor's UDAP claim. *Id.*

On appeal, the debtor claims that the bankruptcy court's decision not to award damages under section 502 was incorrect. The debtor has not appealed the bankruptcy court's disposition of her Truth in Lending Act claim, nor has ITT cross-appealed the bankruptcy court's determination that ITT charged a usurious rate of interest. Thus, the issues on appeal are whether the debtor is entitled to damages under section 502 and/or under UDAP.

Section 502 provides that a person may recover three times the "excess interest" paid to a lender who charges a usurious rate of interest. The bankruptcy court held that section 502 gives the court discretion to determine whether such damages should be awarded. The bankruptcy court also held that statutory term "excess interest" means interest paid which exceeds the entire amount of interest legally payable over the term of the loan. The debtor claimed that "excess interest" means interest paid in excess of that legally permitted for each individual loan installment.

For the reasons that follow, I conclude that the language of section 502 is not discretionary. Further, I hold that the bankruptcy court's interpretation the term "excess interest" is unduly restrictive and does not effectuate the policies which underlie the statute. Therefore, I will remand this action to the bankruptcy court for a determination of the proper amount of damages to award to the debtor under section 502 and to consider whether the debtor is entitled to damages under UDAP.

II. *Facts.*

The bankruptcy court found the following relevant facts.[1] On September 18, 1987, the debtor owned two adjacent homes; one home was her residence and the other was used as an income-producing boarding home. On that date the debtor entered into a loan transaction with ITT and executed a Note and a Mortgage on her residential realty. She received a Federal Disclosure Statement and Notice of Right to Cancel.

The Note, consistent with the other loan documents, recited that the debtor was obligated to pay ITT the principal sum of $43,638.54 plus interest at the rate of 16.00 per cent per annum to be remitted in 120 monthly installments of $731.00 each, representing a total payoff of $37,720.00. Included in the principal amount of the loan was a pre-paid finance charge to ITT for "points" of $3,054.73, which, as recited on the Disclosure Statement, brought the Annual Percentage Rate ("APR") of the loan to 17.99 per cent per annum. The bankruptcy court concluded and the parties do not dispute on appeal that the maximum interest rate permitted under Pennsylvania law was 11.25 per cent per annum.

Included in the itemization of the proceeds distributed to the debtor in the transaction was the sum of $23,291.93. The parties intended this sum to be paid to Town Finance Corporation, which held a mortgage on the debtor's residential property, in full satisfaction of Town's existing mortgage.

ITT made an error in calculating the payment amount required to satisfy fully the Town mortgage. As a result of this error the amount itemized to be paid to Town was incorrectly stated as approximately $500.00 less than the amount actually required to be paid to Town. Town therefore retained a small mortgage senior to ITT after the loan transaction, and ITT obtained a second, not a first, mortgage on the debtor's property.

At trial before the bankruptcy court, the debtor claimed that she made payments on the loan through January, 1989. In sup-

1. Because the bankruptcy court's disposition of the debtor's Truth in Lending Act claim is not an issue in this appeal, I have omitted from my recitation of the facts those facts which are relevant solely to this issue. *See Grigsby,* 119 B.R. at 482–83.

port of this claim, the debtor cited a statement in a Notice of Intention to Foreclose letter to her from ITT alleging defaults as of February, 1989. Payments through January, 1989, would constitute 16 payments of $731.00, for a total of $11,696.00. ITT claimed that the debtor paid a total only of $5,207.42 on the loan. The bankruptcy court did not resolve this dispute. *Id.*, at 483.

### III. *Standard of Review.*

The standard of review of the bankruptcy court's disposition of legal questions is plenary. *Decatur Contracting v. Belin, Belin & Naddeo*, 898 F.2d 339, 342 (3d Cir.1990). The standard of review of the bankruptcy court's findings of fact is whether those findings are clearly erroneous. *In re Abbotts Dairies of Pennsylvania*, 788 F.2d 143, 147 (3d Cir.1986). The standard of review of the bankruptcy court's refusal to consider certain evidence is whether the court abused its discretion. *See, e.g., Hill v. Equitable Trust Co.*, 851 F.2d 691, 699 (3d Cir.1988), *cert. denied sub nom*, 488 U.S. 1008, 109 S.Ct. 791, 102 L.Ed.2d 782 (1989).

### IV. *Discussion.*

#### A. The Debtor's Section 502 Claim.

The dispositive issue on this appeal is whether the bankruptcy court properly construed section 502. This presents a question of state law. No Pennsylvania appellate court has addressed section 502. Therefore, although jurisdiction in this case is not based on diversity of citizenship but rather premised on the debtor's bankruptcy, I must predict how the Pennsylvania Supreme Court would construe section 502. *See Decatur Contracting*, 898 F.2d at 342–45.

The question whether the bankruptcy court correctly interpreted and applied sec-

tion 502 presents an issue of statutory construction. Section 502 provides that:

> A person who has paid a rate of interest for the loan or use of money at a rate in excess of that provided for by this act or otherwise by law or has paid charges prohibited or in excess of those allowed by this act or otherwise by law may recover triple the amount of such excess interest or charges in a suit at law against the person who has collected such interest or charges....

41 P.S. § 502. There is no Pennsylvania legislative history accompanying this section.[2]

There are two issues of construction of this statute. The first is whether the statutory phrase "[a] person ... may recover triple the amount of such excess interest" grants the court discretion to determine whether such damages are appropriate. The second is the proper construction of the phrase "such excess interest".

In order to decide these issues, I look to the Pennsylvania legislature's intent in enacting the statute. The Pennsylvania Superior Court has held that I may "ascertain this intent after reviewing the entire act, its nature, object and purpose, [and] the respective consequences of various constructions of the particular statute ...". *Tyler v. King*, 344 Pa.Super. 78, 496 A.2d 16, 19–22 (1985) (discussing whether Section 6134 of the Uniform Act on Blood Tests to Determine Paternity, 42 P.S. §§ 6131–6137, which provides that the Court "shall" call certain expert witnesses grants the Court discretion to determine whether such witnesses should be called). *Accord Commonwealth v. Ferguson*, 381 Pa.Super. 23, 552 A.2d 1075, 1078–80 (1988) (discussing whether criminal statute which provides that Court "shall" order person committing crime to pay restitution, 62 P.S. § 481, grants Court discretion to determine whether restitution is appropriate).

---

**2.** The triple damage provision of section 502 makes it a penal statute. The Pennsylvania courts follow the well recognized rule of statutory construction that penal statutes must be strictly construed. *Commonwealth v. Brachbill*, 520 Pa. 533, 555 A.2d 82, 85 (1989) (citing *Com-*

*monwealth v. Hill*, 481 Pa. 37, 391 A.2d 1303 (1978)). The fact that the statute must be strictly construed does not, however, permit me to adopt a construction of the statute which alters the plain meaning of the statutory language.

With respect to the first issue, ITT claims that the statute vests the court with discretion to determine whether treble damages should be awarded. The bankruptcy court impliedly agreed with this position. *See Grigsby*, 119 B.R. at 492–93. With respect to the second issue, the debtor contends that section 502 entitles her to three times the amount which she paid in each monthly installment in excess of the legal monthly installment interest rate. In other words, the debtor claims that the term "such excess interest" means excess monthly interest paid rather than interest paid which exceeds the total interest payable over the entire term of the loan. The bankruptcy court declined to accept the debtor's construction of section 502.

1. *Section 502 does not vest the court with discretion to determine whether a party may recover treble damages.*

■ In *In re Russell*, 72 B.R. 855, 870 (Bkrtcy.E.D.Pa.1987), the bankruptcy court stated, "we read the language of 41 P.S. § 502 concerning treble damages as discretionary." In the present case, although the bankruptcy court did not expressly reiterate this statement, its discussion of the

reasons which supported its decision demonstrate that it viewed the language of section 502 as discretionary.[3]

In my view the bankruptcy court's conclusion that section 502 is discretionary is incorrect. The bankruptcy court apparently viewed the legislature's use of the verb "may" in the statute as granting the court discretion. But there is a fundamental distinction between a statute in which the word "may" refers to a Court's function and a statute in which the word "may" refers to the injured party's ability to recover. In the former case, the Pennsylvania courts would most likely construe the statute as discretionary. *See Commonwealth v. Logan*, 519 Pa. 607, 549 A.2d 531, 541 (1988) (construing statutory phrase "court may order" as empowering court to use discretion). In the latter case, however, the use of the term "may" reflects the Pennsylvania legislature's intent that a person can recover under section 502 only if that person first chooses to initiate a claim under the section and subsequently establishes the elements of his or her claim. Significantly, the legislature did not

---

**3.** The *Grigsby* court's application of discretionary principles is revealed in the court's attempt to harmonize this case with *Russell* and *In re Kenderdine*, 118 B.R. 258 (Bkrtcy.E.D.Pa.1990). In *Russell*, the bankruptcy court awarded a debtor treble damages under section 502, *Russell*, 72 B.R. at 870, while in *Kenderdine* the bankruptcy court declined to make such an award. *Kenderdine*, 118 B.R. at 266.

The *Grigsby* court distinguished *Russell* and *Kenderdine* on their facts on four grounds. First, the court noted that in *Russell* the difference of the period between the expiration of the loan and the time at which excess interest was measured was between 60 and 39 months. The court compared that difference to the time periods involved in *Kenderdine*, 13 years and 6½ years, and in the debtor's case, 10 years and 3 years. The court concluded that "the difference was much less and the distinction of when the finance charges paid and collectable was measured were far less significant in *Russell* than in *Kenderdine* or [this case]." *Grigsby*, 119 B.R. at 492. Second, the *Grigsby* court noted,

[O]ur *Russell* decision bristles with outrage at the obvious overreaching played upon the unsophisticated debtor/borrower in that case. Although the Debtor attempts to articulate the same sort of outrage here, the facts present a borrower of unmeasurable sophistication but

who we know owned two pieces of realty, and a lender charging an interest rate about half what the lender charged in *Russell*, which, like the *Kenderdine* lender, basically made a mistake and, while obliged to suffer certain consequences as a result, has not engaged in any conduct meriting harsh reprisals.

*Id.* (citation omitted). Third, the court noted that in *Russell* the court reformed the parties' interest rate to minimize the lender's damages. The court noted that if the court followed the same methodology in this case, ITT's rate would not be usurious. *Id.* Finally, the court distinguished the instant case from *Russell* and *Kenderdine* because of the procedural posture of the cases:

[W]e note that here, unlike in *Russell* or in *Kenderdine*, we are not considering an objection to a proof of claim, which would oblige us to fix the valid amount of the debtor's claim. We are being asked, in substance, to declare the rights of the parties *inter se.*
This causes us to be more reluctant to set a sum in which one party is due to the other than in either of those cases. The positions of the respective parties on the issue of the amount that the Debtor actually paid are so diverse that any determination of the amount of the claim of ITT against the Debtor is impossible to measure at this juncture.

*Id.*

include any mention of the Court's function in the language of section 502.

I therefore conclude that the section does not provide the court with discretion to award damages but instead provides for the mandatory recovery of damages under its provisions if the borrower's payments meet the definition of "excess interest" discussed below.

2. *The phrase "excess interest" refers to interest paid in excess of that permitted under the law as of the date the loan is found usurious.*

■ Subsequent to its discussion of the balance of equities underlying its decision, *see* discussion, *supra*, n. 3, the bankruptcy court held that because the debtor had not paid any interest in excess of that permitted over the entire term of the loan, she had paid no "excess interest" and therefore could not recover under section 502. *Grigsby,* 119 B.R. at 493. Because of the policies which underlie treble damage awards in general, I decline to accept this construction of the statute.

Section 502 uses the term "such excess interest" to refer to the phrase "paid a rate of interest for the loan ... in excess of that provided for by this act". The statute permits a person who has paid such interest to recover triple the amount of the payments. Three policies underlie this type of treble damage provision. *See, e.g., Gregory Marketing Corp. v. Wakefern Food Corp.,* 787 F.2d 92, 94 (3d Cir.1986).[4] One policy is to provide ample compensation to the victims of the illegal activity. A second policy is to deprive those who violate the law of the fruits of their illegal actions. Finally, a third policy is to deter future violations. The bankruptcy court's construction of section 502 does not further these policies.

First, the bankruptcy court's construction does not compensate the debtor fully for ITT's illegal conduct. While the court's decision gave the debtor credit against the principal amount of the loan for her payments, she has been deprived of the value over time of the monies which she paid as excess interest. ITT does not dispute that the debtor paid monies in excess of that permissible under the law. It is similarly undisputed that the debtor could have earned interest on the amounts which she paid in excess of that permitted under the law. Thus, the bankruptcy court's construction of section 502 does not make the debtor whole.

Second, the bankruptcy court's construction of section 502 does not deprive ITT of the fruits of its illegal action. ITT presumably earned interest on or at least had the use of the debtor's excess interest payments and has retained that gain.

Finally, and most important of all, the bankruptcy court's construction removes the deterrent effect from section 502. In enacting the treble damage provision of section 502 the Pennsylvania legislature warned lenders of the legislature's abhorrence of usurious interest rates. In order to prevent the use of such rates, the legislature unequivocally informed all potential lenders of the consequences flowing from such illegal actions. The bankruptcy court's position in effect removes this deterrent effect because it permits the wrongful lender to succeed with charging a usurious rate if the total amount of interest paid on the loan is less than the total amount due over the life of the loan.[5]

I conclude that the interpretation of section 502 which gives effect to the purposes of the section is that which calculates "excess interest" under the statute as interest paid in excess of that due on any given

---

**4.** *Gregory Marketing* involved the treble damage provision of the Clayton Act. *See* 15 U.S.C. § 15(a). In my view, the *Gregory Marketing* Court's recitation of the general policies underlying treble damage awards applies with equal force to section 502.

**5.** The bankruptcy court's opinion reflects a concern that ITT should not be penalized because its acts were only negligent. *Grigsby,* 119 B.R.

at 492 (treble damage award against ITT inappropriate under section 502 because ITT "has not engaged in conduct meriting harsh reprisals."). But through section 502 the Pennsylvania legislature has determined precisely the consequences which flow from a lender's charging a usurious rate of interest. The statute does not authorize the court to consider degrees of culpability in applying the section.

payment rather than interest due over the term of the entire loan. Therefore, I will reverse the bankruptcy court on this issue of statutory construction.

3. *The record reflects that the parties to the loan provided for the allocation of payments between interest and principal.*

▇ In addition to its construction of section 502, the bankruptcy court held that because the record did not reflect that the parties had allocated the distribution of the debtor's payments between interest and principal, in light of its finding that the loan was usurious, it would allocate all of the payments to principal. The court explained its reasoning:

> The pertinent Pennsylvania law is silent on the issue of how payments made upon a loan which is usurious are to be allocated between principal, legal interest and excess interest. The Debtor argues, in substance, that we should allocate each payment to portions of all three. However, this is contrary to the general rule adopted in interpretation of the anti-usury provisions of the National Banking Act, 12 U.S.C. § 86 ("the NBA"). The NBA, like the Pennsylvania usury law, prohibits collection of any interest when a usurious rate of interest is charged.
>
> From the earliest interpretations of the NBA, the general rule has been that, in the absence of an agreement between the debtor and the creditor on the application of payments, the payments are to be allocated first to principal and then to interest. More importantly, the Third Circuit Court of Appeals, in *Danforth v. National State Bank of Elizabeth,* 4[8] F. 271, 277 (3d Cir.1891), adopts the principle that, when payments are not specifically allocated to principal and interest in a usurious loan, "[t]he law will appropriate the payment to the principal of the drafts." . . .

*Grigsby,* 119 B.R. at 492–93 (citations omitted). The bankruptcy court then stated, "[t]here is no evidence that the Debtor's payments, the amount of which is itself greatly in dispute, were allocated towards principal and interest in any specific man-

ner." *Id.,* at 493. Lacking such evidence, the court held that the debtor had paid only principal and was not entitled to invoke the protections of section 502. *Id.*

The debtor contends on appeal that the bankruptcy court's conclusion is in direct conflict with the evidence presented at trial. Specifically, the debtor points to a provision of the note which she signed and which was admitted in evidence at trial as plaintiff's exhibit 2. That provision states, "Each payment shall be applied first to interest due and the remainder shall be applied to the balance of the Principal Amount of the Loan." *See* Exhibit 6 to the record on appeal.

The record on appeal does not reflect whether the debtor brought this provision to the attention of the bankruptcy court during the trial. After the bankruptcy court rendered its decision on October 3, 1990 the debtor filed a motion to amend or alter the judgment. The motion did not raise this issue. In denying the motion, however, the bankruptcy court referred to the provision. The court stated that "after a colloquy with counsel" regarding the motion to alter or amend,

> With respect to the contention that this court overlooked the purported allocation of principal and interest set forth in the parties' contract, we conclude that this issue was not raised in the Motion [to alter or amend judgment] and hence was finally determined in our Opinion. Paragraph 5(b) of the Motion, cited by debtor's counsel as raising this issue, in fact merely reiterates the request that we compute the total amount due to ITT from the Debtor. Furthermore, we doubt that the contract is clear enough on this issue to overcome the general rule [regarding the allocation of payments] recited [in] our Opinion.

*Id.,* at 494. The debtor contends that this conclusion was incorrect.

First, in my view the bankruptcy court abused its discretion in refusing to reconsider its decision in light of the parties' agreement. While the debtor does not contend that she specifically raised this provision at trial, the provision was part of an

exhibit which was admitted in evidence at trial. In light of the fact that the bankruptcy court's application of the "general rule" regarding allocation of payments is dispositive of the debtor's section 502 claim and as the provision was relevant to its determination, I conclude that the court should have considered the provision in reaching its decision.

 Second, I disagree with the bankruptcy court's conclusion that the language of the contract is not clear enough to "overcome" the "general rule" which the bankruptcy court cited correctly in its Opinion. The court recognized that the general rule regarding allocation of payments applies only "in the absence of an agreement between the debtor and the creditor on the application of payments". *Id.*, at 492–93. In this case, the parties included a clear and unequivocal provision regarding the allocation of payments in their agreement. This provision need not "overcome" the general rule, because the general rule applies only in the absence of such a provision. Therefore, I conclude that the provision establishes that the debtor's payments should be allocated first to interest and second to principal.

4. *Remand to the bankruptcy court is required because the court has not determined the amount of the debtor's payments.*

 At trial the parties disputed the amount of the debtor's payments to ITT. The bankruptcy court did not resolve this issue because it held that under section 502 the debtor was not entitled to treble damages because she had not paid any "excess interest". Because I have concluded that the bankruptcy court's construction of section 502 was incorrect, I will remand this issue to the bankruptcy court for further proceedings. On remand the bankruptcy court may undertake whatever additional proceedings are necessary, if any, to resolve the parties' dispute concerning the amount of the debtor's payments. The court should then reconsider the debtor's claim for damages under section 502.

B. The Debtor's UDAP claim.

The bankruptcy court declined to consider the debtor's UDAP claim because the debtor had failed to demonstrate that she paid excess interest and was therefore entitled to damages under section 502. *See id.*, at 493. In light of my decision that this conclusion was incorrect and that the debtor may on remand recover damages under section 502, I will remand the debtor's UDAP claim to the bankruptcy court for further consideration.

V. *Conclusion.*

For the foregoing reasons, I will vacate both the bankruptcy court's judgment in favor of ITT on the debtor's claim under section 502 and the bankruptcy court's entry of judgment in favor of ITT on the debtor's claim under UDAP and will remand this action to the bankruptcy court for further proceedings consistent with this opinion.