**In re Stephen & Ursula DANGLER, Debtors.**

**Stephen & Ursula DANGLER, Plaintiffs,**

v.

**CENTRAL MORTGAGE COMPANY, Defendant.**

Bankruptcy No. 84–04157K.
Adv. No. 87–0169S.

United States Bankruptcy Court,
E.D. Pennsylvania.

July 16, 1987.

Mary Jeffrey, Philadelphia, Pa., for debtors/plaintiffs.

Lawrence T. Phelan, Philadelphia, Pa., for defendant/Central Mtg. Co.

Edward Sparkman, Philadelphia, Pa., Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The instant Adversary proceeding is in the form of an attack on the Proof of Claim of a Mortgagee filed by the Debtors, husband and wife in a joint Chapter 13 bankruptcy case. The Debtors assert that the Claim should be reduced by $2,000.00 due to their purported right to recoup this sum as against the Mortgagee due to alleged violations of the federal Truth-in-Lending Act, 15 U.S.C. § 1601, et seq. (hereinafter referred to as "TILA"), in the disclosure statement (hereinafter referred to as "the Statement") presented to the Debtors in the mortgage transaction.

The matter presents one novel question demanding our attention: does the recent decision by the Pennsylvania Superior Court in *New York Guardian Mortgage Co. v. Dietzel*, 362 Pa.Super. 426, 431, 524 A.2d 951, 953 (1987), holding, by interpretation of § 1640(e) and (h) of the TILA, that recoupment defenses "cannot be asserted as a counter-claim in a mortgage foreclosure action," impact adversely on the large body of case decisions of this district court and this bankruptcy court which allow recoupment from TILA violations to reduce mortgagee's claims? *See, e.g., Werts v. Federal National Mortgage Ass'n*, 48 B.R. 980, 983–84 (E.D.Pa.1985) (per LORD, CH. J.); *In re Johnson-Allen*, 67 B.R. 968, 972 (Bankr.E.D.Pa.1986) (per SCHOLL, J.); and *In re Hanna*, 31 B.R. 424, 425–26 (Bankr. E.D.Pa.1983) (per GOLDHABER, CH. J.). We answer this question in the negative and proceed to enter judgment in favor of the Debtors, reducing the Mortgagee's Proof of Claim by $2,000.00.

The instant Adversary proceeding was commenced against CENTRAL MORTGAGE COMPANY, now known as MERITOR MORTGAGE CORPORATION EAST (referred to hereinafter as "the Mortgagee"), on February 17, 1987. Pursuant to our Order of May 8, 1987, the parties filed a Stipulation of Facts on May 11, 1987, and Cross-Motions for Summary Judgment and supporting Memoranda were filed by the parties, respectively, on May 28, 1987, and June 18, 1987. The debtors saw fit to file an unsolicited Memorandum in reply to the Mortgage's Motion and Memorandum. *See In re Jungkurth, Jungkurth v. Eastern Financial Services, Inc.*, 74 B.R. 323, 325–26 (Bankr.E.D.Pa., 1987) (unsolicited Memoranda should be filed only after consultation of opposing party and court).

Because of the Stipulation, the facts are not in dispute, and we can recite them in the course of an Opinion in narrative form, rather than rendering Findings of Fact. On November 30, 1976, the Debtors, STEPHEN AND URSULA DANGLER, signed a mortgage note in favor of the Mortgagee in a transaction to purchase their residence at 4731 Princeton Avenue, Philadelphia, Pennsylvania 19135. On that same date, the Mortgagee provided the Debtors with the Statement, designated as "Federal Truth-in-Lending Statement (as part of Disclosure/Settlement Statement)."

Eight years later, on December 3, 1984, the Debtors filed a petition seeking relief under Chapter 13 of the Bankruptcy Code. On or about April 16, 1985, the Mortgagee filed a Proof of Claim, alleging a secured claim for delinquent mortgage arrearages, plus attorneys fees and costs, amounting to $3,471.13. On September 5, 1985, this Court entered an Order confirming the Debtors' Chapter 13 Plan. This proceeding, as we noted previously, was commenced on February 17, 1987.

The Debtors' contend that the Mortgagee violated the TILA by failing to adequately disclose (1) the late charges which could be imposed; (2) the security interests taken in the Debtors' property in the transaction; and (3) the initial due date of payment.

It is perhaps instructive to observe that the Mortgagee tenders no defense, even in the alternative, that it has not violated the TILA, in its Memorandum. Instead it relies on the *Dietzel* decision as its sole line of defense.

We must, however, briefly examine the Debtors' allegations to determine whether viable violations of the TILA exist in the Statement. We note initially that, since the transaction pre-dated the amendments to the TILA effective in 1982, we must apply the "old" TILA. *See* P.L. No. 96–221, § 625 (1980), *as amended*, P.L. No. 97–25, § 301 (1981). *Johnson-Allen, supra*, 67 B.R. at 969–70.

Like the present version of the TILA, the "old" TILA required that a creditor disclose the default, delinquency, or similar changes payable in the event of late payments. Former 15 U.S.C. § 1638(a)(9). The "old" version of the pertinent Regulation Z also required, like the present version, that a creditor disclose "the amount, or method of computation of the amount, of any default, delinquency, or similar charges payable in the event of late payments." Former 12 C.F.R. § 226.8(b)(4).

Clause six of the Statement states as follows: "(I)n the event of late payments, charges may be assessed as follows: Late charges more than 15 days late 4% of amount due is payable by borrower to lender." We believe that the Debtors are correct in contending that it is unclear as to what this clause means, or, after reading it, how to determine the amount of the charges that may be assessed. The clause does not contain an amount of charges nor does it contain a comprehensive statement of the method for computing the late charges. A percentage is stated, but is unclear upon what figure the percentage is to be computed. The clause could mean a computation of four (4%) percent of the payment due that is late *or* of four (4%) percent of payment due *or* of four (4%) percent of the entire amount of the balance due. Therefore, we agree with the Debtors that this clause does not clearly explain the method of computing the amount of the late charge. *Accord, In re Whitley*, 772

**934**

F.2d 815 (11th Cir.1985); and *Watts v. Key Dodge Sales, Inc.,* 707 F.2d 847 (5th Cir. 1983).

■ We also agree that the Statement fails to clearly identify the property to which the security interest relates, as required by former 15 U.S.C. § 1638(a)(10), and 12 C.F.R. § 226.8(b)(5). The disclosure statement provides as follows:

'The security for this obligation is a first mortgage lien on the following property together with a lien on all fixtures, chattel *and personal property other than household furniture now or hereafter attached to or used or useful in connection with said property:* 4731 Princeton Street, Philadelphia, Pennsylvania. The judgment note or bond & warrant given in connection with the loan when recovered or recorded constitutes a lien on real property owned by borrower in the County where such judgment is recovered or recorded (emphasis added).

By way of contrast, the mortgage provides as follows:

Together with all and singular the buildings, improvements, and fixtures on said premises, as well as all additions or improvements now or hereafter made to said premises, streets, alleys, passages, ways, waters, water courses, rights, liberties, privileges, hereditaments, and appurtenances whatsoever thereunto, and the revisions and the remainders, rents, issues, and profits thereof, and in addition thereto the *following described household appliances, which are, and shall be deemed to be fixtures and a part of the realty, and are a portion of the security for the indebtedness herein mentioned, namely Range, Wall to Wall Carpeting, A/C, Alum. SS & S & Drs.* (emphasis added).

Thus, contrary to the language in the Statement, the mortgage does *not* purport to include "all personal property other than household furniture and furnishings ..." in its description of the security interest. In fact, the mortgage references only certain specific household "appliances." [1] Since the Statement indicates that a security interest will be taken in property that is not in fact covered by the mortgage, the Statement is over-inclusive and hence does not conform to the TILA requirements. *See In re Martin,* 72 B.R. 126, 128 (Bankr. E.D.Pa.1987); *In re McCausland,* 63 B.R. 665, 669 (Bankr.E.D.Pa.1986); *In re Perry,* 59 B.R. 947, 950–51 (Bankr.E.D.Pa.1986). *See also Bizier v. Globe Financial Services,* 654 F.2d 1, 3 (1st Cir.1981).

■ Finally, the Debtor asserts that the Mortgagee violated another TILA requirement in that the disclosure of the initial due date of payment is not made. Both the TILA and Regulation Z then in effect required disclosure of the "number, amounts and *due dates"* of payments (emphasis added). Former 15 U.S.C. § 1638(a)(8) and 12 C.F.R. § 226.8(b)(3). Clause four of the Statement states: "[T]he repayment terms are: 300 monthly installments of $181.42 each on the first day of each month." However, nowhere on the form is there a month recited on which the initial underpayment is due and we could only guess at the appropriate month from review of the Statement.

As a result, the Debtors should each receive statutory damages of $1,000.00. Although an amendment to the TILA effective in 1982, 15 U.S.C. § 1640(d), expressly states that only one recovery is permitted even where there are multiple obligors in a contract, the courts in this Circuit, addressing the issue of whether the "old" TILA permitted multiple recoveries for multiple obligors, uniformly held that each obligor is entitled to recover for a violation of the TILA, as we held in *Johnson-Allen, supra,* 67 B.R. at 974. *See Lee v. Fidelity Consumer Discount Co.,* C.A. No. 79–2160, slip op. at 18 (E.D.Pa. June 15, 1981) (per DITTER, J.); *Griggs v. Provident Consumer Discount Co.,* 503 F.Supp. 246, 251 (E.D.Pa.1980, *appeal dismissed after remand,* 699 F.2d 642 (3d Cir.1983) (per LORD, CH. J.); and *Cadmus v. Commer-*

---

**1.** We do note that the reference to "Alum. SS & S & Drs." is somewhat less than enlightening. What could this be?

*cial Credit Plan, Inc.,* 437 F.Supp. 1018, 1021–22 (D.Del.1977) (per STAPLETON, J.).

■ The foregoing discussion leaves for our consideration only the novel issue regarding the impact of the *Dietzel* case which we noted at the outset. The significant portion of the *Dietzel* decision is the following single paragraph:

An action in mortgage foreclosure is strictly an *in rem* proceeding, and the purpose of a judgment in mortgage foreclosure is solely to effect a judicial sale of the mortgaged property. *Meco Realty Co. v. Burns,* 414 Pa. 495, 100 A.2d 869 (1964). A judgment in a mortgage foreclosure action is not a judgment for money damages and therefore cannot be "an action to collect the debt" as required under § 1640(h) and (e) of the Truth-In-Lending Act. Therefore, a set-off for an alleged violation of the Truth-in-Lending Act cannot be asserted as a counter-claim in a mortgage foreclosure action.

For three reasons, we do not believe that the *Dietzel* decision impacts on the result in the instant case: (1) On its own terms, the *Dietzel* decision is plainly incorrect; (2) Assuming, *arguendo,* that it is correct, it is not binding on this Court, even if we were hearing a mortgage foreclosure action or an action comparable thereto, since we have repeatedly held to the contrary; and (3) Assuming *arguendo* that it is correct and would be binding if this Court had before it a mortgage foreclosure action or an action comparable thereto, what is before us is a proceeding totally different from a mortgage foreclosure and therefore the decision has no impact on our result here.

Considering the *Dietzel* case on its own terms, we note that the court bases its decision on the ground that a mortgage foreclosure "is strictly an *in rem* proceeding" and that "set-off defenses" are barred in such actions.

The first premise is faulty. Goodrich-Amram comments on this topic thusly:

The foreclosure action … is often referred to as an action in *rem.* This is not strictly accurate. A true *in rem* action determines title to property binding upon the whole world, but in a foreclosure proceeding the purchaser at the sheriff's sale generally gets no better title than the mortgagor had at the time of execution of the mortgage…. The action would better be described as de terris. 3 GOODRICH–AMRAM 2d, § 1141:1, at 435 (1976).

*See also Reuter, Mortgage Foreclosure in Pennsylvania,* 85 DICKINSON L.REV. 275, 278 (1981). In fact, the lone case cited by the Superior Court for this principle, *Meco Realty Co. v. Burns,* 414 Pa. 495, 498, 200 A.2d 869, 871 (1964), does not support this principle. Rather, the *Meco* court agrees with the categorization of the proceeding as *de terris,* i.e., imposing a judgment against the land rather than personal liability, and *not* as an *in rem* proceeding.

The second premise, that a defense in the nature of a "set-off … cannot be asserted as a counter-claim in a mortgage foreclosure action," is equally indefensible. In fact, Pennsylvania Rule of Civil Procedure 1148, pertinent to actions in mortgage foreclosure, specifically authorizes any counter-claim "which arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's action arose." Goodrich-Amram comments on this Rule as follows:

§ 1148:1 Generally; counterclaim and setoff

Decisions under the prior practice frequently stated that no counterclaim was permitted in mortgage foreclosure but only a right of setoff. However, a careful reading of the opinions discloses that there were really two rules, one as to counterclaim between mortgagor and mortgagee, the other as to counterclaims between terre-tenant and mortgagee. *As between mortgagor and mortgage, the right of setoff was broad.* It included any liquidated contractual claim due by the mortgagee to the mortgagor. Unliquidated claims and tort claims could not be set off. *The net result was a right of setoff as broad as the ordinary*

*right of counterclaim in assumpsit.* There was no requirement that the setoff be related to the mortgage transaction. 3 GOODRICH–AMRAM 2d, *supra,* § 1148:1, at 487 (footnotes omitted) (emphasis added).

*See also Reuter, supra,* 286–87.

The Pennsylvania Supreme Court has already held that claims of recoupment based on violations of TILA were permissible under the "old," *less*-permissive version of 15 U.S.C. § 1640(e)[2] in *Household Consumer Discount Co. v. Vespaziani,* 490 Pa. 209, 216–24, 415 A.2d 689, 693–97 (1980). Without so much as attempting to distinguish *Vespaziani,* the *Dietzel* court rejected out of hand the principle that *any* setoff or counterclaim can be raised in defense of a foreclosure action, not to mention the holding in *Vespaziani* that the specific recoupment defense of a violation of the TILA may be raised. While *Vespaziani* was an assumpsit action rather than a mortgage foreclosure action, it should be recalled that Goodrich-Amram, in the passage last quoted, stated that the right of setoff in a mortgage foreclosure action was equally as broad as it is in an action in assumpsit.

Our research indicates that prior to the *Dietzel* decision, it had been assumed by litigants and judges of this Court, and apparently, by litigants and courts elsewhere, that a violation of the TILA was a viable defense to a mortgage foreclosure action. In this jurisdiction, we note *Union Banking & Trust Co. v. Johnson,* 28 D. & C. 3d 158, 164–68 (Clearfield Co., Pa., C.P. 1983) (TILA defense carefully considered before being rejected on merits); and *Reuter, supra,* at 286 ("another defense that can be advanced is the failure of the mortgagee to fulfill the disclosure requirements of the

federal Truth-in-Lending Act"). Courts in other jurisdictions have made the same assumption. *See First State Bank of Crossett v. Phillips,* 13 Ark.App. 157, 681 S.W.2d 408 (1984); and *Streets v. M.G.I.C. Mortgage Corp.,* 378 N.E.2d 915, 920, 177 Ind.App. 184 (1978). *See generally* Madway, *A Mortgage Foreclosure Primer Part II,* 8 CLEARINGHOUSE REV. 250, 250–51 (1974).

We believe that the assumption made by these courts and commentators is correct, and that the crucial paragraph in *Dietzel* represented a brief lapse in reasoning which we would be most disinclined to follow.

In any event, we need not follow *Dietzel,* as it is a state court decision interpreting federal law in a manner contrary to interpretations of that same federal law by our federal district court and this federal bankruptcy court. The *Werts, Martin, Johnson-Allen, McCausland,* and *Hanna* decisions cited *supra* are only a small sampling of decisions emanating from many of the judges of this court allowing Mortgagor-Debtors to assert TILA recoupment defenses to Mortgagees' Proofs of Claim.

Ironically, the Pennsylvania Supreme Court, in *Vespaziani,* specifically states that its decision was based upon application of the *federal* law of recoupment. 490 Pa. at 212–16, 415 A.2d at 691–93. To follow the *Dietzel* decision would be inconsistent with decisions of our own *federal* court in the application of the law of recoupment directly to the contrary.

Finally, the *Dietzel* decision relied heavily upon the language in the "new" version of 15 U.S.C. §§ 1640(e) and (h)[3] which, per

---

**2.** The language of this provision was as follows:

(e) Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurence of the violation.

The "new" version is quoted at page 936 *infra,* n. 3.

**3.** These sections provide as follows:

(e) Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction,

within one year from the date of the occurrence of the violation. This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law.

.    .    .    .    .

(h) A person may not take any action to offset any amount for which a creditor or assignee is potentially liable to such person

the *Dietzel* court,[4] confined the application of defensive use of TILA violations to "an action to collect amounts owed" or "an action to collect the debt." However, this purportedly limiting language did not appear in the "old" version of § 1640(e), see page 936 *supra,* n. 2, and it is *that* version which applies to this action and was specifically construed to *allow* a recoupment defense in *Vespaziani.*

There is one further basis on which to distinguish *Dietzel* from the instant adversary proceeding, assuming *arguendo* we felt the inclination or compulsion to follow this decision, which we clearly do not. *Dietzel* relies upon a characterization of a Pennsylvania mortgage foreclosure action which, however doubtful its accuracy, has *no* application to Proof of Claim litigation in a bankruptcy court. As the Debtors point out, irrespective of what might be true as a mortgage foreclosure action, the filing of a Proof of Claim clearly *is* an attempt "to collect amounts owed" or "to collect the debt." Thus, the instant litigation concerning the validity of a Proof of Claim clearly *is* an "action to collect amounts owed" or "collect" on a "debt." Our district court has, moreover, expressly so held. *See Werts, supra,* 48 B.R. at 983. Clearly, then, the instant proceeding could not possibly be characterized as *in rem,* and any defenses, in the nature of recoupment or otherwise, *can* be asserted here.

The Mortgagee's defense, confined to invocation of the *Dietzel* decision, therefore must fail. We shall hence proceed to enter an Order granting the Debtors the relief which they seek and reducing the Mortgagee's Proof of Claim by $2,000.00. An Order to this effect shall be entered.

under subsection (a)(2) of this section against any amount owed by such person, unless the amount of the creditor's or assignee's liability under this subchapter has been determined by judgment of a court of competent jurisdiction in an action of which such person was a party. This subsection does not bar a consumer then in default on the obligation from asserting a violation of this subchapter as an original action, or as a defense or counterclaim to an action to collect amounts owed by the consumer brought by a person liable under this subchapter.

We note that § 1640(h) has no application whatsoever to the issue at bar or before the *Deitzel* court. It is merely meant to prohibit consumers from officiously off-setting purported TILA violations before court action is instituted.

4. We would say "erroneously" so, as we believe those sections meant to allow a recoupment defense to be broadly asserted.