**In re Clarence E. SHAW and, Betty Shaw, Debtors.**

**Clarence E. SHAW and Betty Shaw, Plaintiffs,**

**v.**

**FEDERAL MORTGAGE & INVESTMENT CORP. and Statewide Rehab, Inc., Defendants.**

**Bankruptcy No. 92–40223. Adv. No. 93–2050.**

United States Bankruptcy Court, D. New Jersey.

March 22, 1994.

Neil J. Fogarty, Hudson County Legal Services Corp., Jersey City, NJ, for debtors/plaintiffs Clarence E. Shaw and Betty Shaw.

Edward A. Dreskin, Newark, NJ, for defendant Federal Mortg. and Inv. Corp.

## OPINION

NOVALYN L. WINFIELD, Bankruptcy Judge.

Clarence E. Shaw and Betty Shaw ("Shaws" or "Debtors"), filed a Complaint to cancel a second mortgage held by Federal Mortgage and Investment Corp. ("Federal") and to disallow Federal's proof of claim. In response, Federal filed an Answer and asserted a counterclaim against the Shaws. Federal also filed an Amended Answer. Before the Court is the Shaws' motion requesting Partial Summary Judgment on the following counts: Count 1, Assignee Liable for Claims and Defenses; Count 4, NJ Retail Installment Sales Act; Count 5, Equitable Rescission; Count 6, NJ Consumer Fraud Act; Count 8, The Truth in Lending Act ("TILA"); Count 9, Objection to Proof of Claim. In turn, Federal filed a Brief in Opposition.

This court has jurisdiction over this matter pursuant to sections 1334 and 157(b)(2)(B) & (K) and the standing order of reference from the District Court for the District of New Jersey, dated July 23, 1984.

### STATEMENT OF FACTS

As a preliminary matter, the court notes that Federal has not controverted the facts

presented by the Shaws despite having the opportunity to do so both in its Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment and at a hearing on the motion for Summary Judgment.

On June 15, 1987, Statewide Rehab, Inc.,[1] ("Statewide"), went to the home of the Shaws and solicited their agreement to contract for the installation of storm windows at a contract price of $12,000. (Ex. 1.)[2] Because the Shaws wanted replacement windows, not storm windows, they rejected the storm windows when they arrived. (Shaw Aff. ¶ 6.) Thus, on September 9, 1987, a new contract for replacement windows and siding was entered into in the amount of $18,250. (Ex. 2.)

Upon obtaining the contract, Statewide approached Federal, as well as Stuyvesant Investment Co., to obtain financing. Federal obtained the requisite financial information regarding the Shaws from Statewide over the phone and prepared a "worksheet" to examine the Shaws' creditworthiness. (Miles Dep. at 61–11; Exs. 11–12.) On June 18, 1987, Federal requested a credit check and a title search. (Ex. 14.) The results of the title search are contained in a written report to Federal dated June 23, 1987. (Ex. 15.) Following receipt of the TRW report, Federal made a determination to sell the contract to an ultimate lender, as was its customary practice.

In this instance, the ultimate lender was Interchange State Bank ("Interchange"). (Accavallo Dep. at 12–4.) Federal faxed the Shaws' "worksheet" to Interchange. (Heil Dep. at 25–5.)

Pursuant to a "Dealer Agreement" between Federal and Interchange, Federal agreed to notify the contractor of the approval of financing only after Interchange had made such approval. (Ex. 18.) In accordance with this agreement, on June 23, 1987, Michelle Heil, the lending officer at Inter-

change, authorized the financing for the Shaws and notified Federal. (Heil Dep. at 6–16.) In turn, Federal sent Statewide a Notice of Approval on June 24, 1987. (Ex. 9.)

However, because the Shaws wanted replacement windows, not storm windows, a second contract was entered into on September 9, 1987. (Ex. 2.) Once again, the procedures outlined above were instituted. Statewide contacted Federal and requested financing for $18,250. Federal then faxed the worksheet to Interchange the worksheet with a note stating "9/10 Michelle, We need an increase to $18250–[.]" The same worksheet reflects approval: "9/11 OK increase to $18250 as per Michelle." On September 18, 1987, a revised notice of approval for financing at $18,250 was dispatched to Statewide. (Ex. 10.)

As collateral for the loan, the Shaws granted Federal a second mortgage on their home for $18,250. (Ex. 3.) Although the mortgage is dated June 15, 1987, the Shaws maintain that the mortgage was backdated. According to the debtors, the backdating is evidenced by the fact that on June 15, 1987, the identity of the lender/mortgagee was unknown, and further, a contract for $18,250 did not exist until September 1987.

Corroborating the Shaws' assertion of backdating is the description of the property in the mortgage that coincides exactly with the description given in the September 15, 1987, title search but not that in the June 1987, title search. (Ex. 3.) To illustrate, the description of the property in the September 1987, title search stated that the property was on lot 129, "BLOCK 1319 C.B. 399." (Ex. 16.) By comparison, the property description in the June, 1987 title search described the property as lot 129, block 1319 and "CNTY BLOCK 39." (Ex. 15.) If the mortgage had been issued on June 15, 1987,

---

**1.** Statewide Rehab. Inc. is defunct and its President, Robert Kramer III, is deceased. *See* Plaintiff's Brief for Partial Summary Judgment at 2. Federal insists that the Shaws should pursue Statewide as a defendant. However, Federal's own contract form, assigning the contract from Statewide to Federal, permits Federal to attempt to seek indemnification from the contractor if it so wishes. (Ex. 4 at 2.)

**2.** The Exhibits referred to are appended to the Affidavit of Clarence Shaw and Betty Shaw in Support of Motion for Partial Summary Judgment and the Certification of Neil Fogarty, Re: Exhibit List in Support of Motion for Partial Summary Judgment, filed October 1, 1993.

it would be more likely to contain the property description recited in the June, 1987 title search. Moreover, a notary stamp on the June 15, 1987 mortgage reflects a date of December 3, 1987. (Ex. 3.)

Additionally, the Shaws assert that someone "wrote out a backdated contract on Statewide's form." (Pls.' Br. at 10.) As the Shaws have illustrated, although Statewide's contract form is dated June 15, 1987, it reflects the amount of the contract as $18,-250.00, which is the amount contracted for in September of 1987. (Ex. 6.)

The Shaws further claim that the only notice of the Right To Cancel that exists is dated June 15, 1987, and it incorrectly lists the date of cancellation as June 22, 1987. (Ex. 5.) Nevertheless, the Shaws maintain that they never received that notice or any other notice, including the appropriate notices for the September 1987 contract.[3] (Pls.' Br. at 4, 9–10.)

On October 16, 1991, having paid $11,-371.49, the Shaws stopped making payments to Interchange. (Ex. 7.)[4] Pursuant to a Dealer Agreement between Interchange and Federal, Federal was obligated to repurchase the account, which it did. (Ex. 18 ¶ 8 at 4.)

On December 4, 1991, Federal instituted an action against the Shaws in Superior Court, Law Division, Essex County, which was later dismissed without prejudice. Federal then filed a foreclosure action in the Superior Court, Chancery Division, Hudson County.

On June 23, 1992, the Shaws sent Federal a rescission notice. (Ex. 20.) Federal did not act within the twenty days statutorily prescribed by 15 U.S.C. § 1635(b) or any time thereafter.

On December 14, 1992, the Shaws commenced a Chapter 13 bankruptcy case. The debtors' scheduled Federal as a secured claim holder but listed the amount of the claim as zero based on the alleged rescission. On January 14, 1993, Federal filed a proof of claim in the amount of $17,484.32. On January 21, 1993, the Shaws filed this adversary proceeding against Federal to cancel the mortgage and disallow Federal's claim. In turn, Federal answered and counterclaimed asserting in their first count, that there remains a balance due of $15,525.25 plus reasonable attorney fees of $2,085.05 for a total of $18,510.30 plus continuing interest at the contract rate, and in their second count, that they are entitled to compensatory, punitive, and special damages, counsel fees, interest, and costs of suit as a result of the Shaws' bad faith allegations in the Complaint.

After substantial discovery, the Shaws moved for Partial Summary Judgment on: Count 1, Assignee Liable for Claims and Defenses; Count 4, NJ Retail Installment Sales Act; Count 5, Equitable Rescission; Count 6, NJ Consumer Fraud Act[5]; Count 8, The Truth in Lending Act; Count 9, Objection to Proof of Claim.

*DISCUSSION*

Summary judgment is a mechanism that permits courts to avoid unnecessary trials

3. Plaintiffs' handwriting expert, Anita Biggs, concluded that "there is a *very strong probability* that the printing" on the Notice of the Right to Cancel, dated June 15, 1987, "was penned in by the same hand as that penning the printing on Standard S4[,]" a Statewide Rehab. Inc. Affidavit re: Clarence & Betty Shaw for property at 167 Bidwell Ave., Jersey City, NJ, notarized by Arlene Donovan. (Shaws' Supplemental Aff. Ex. C.) Plaintiffs maintain that Arlene Donovan was an office worker at Statewide Rehab. (Pls.' Reply Br. at 2.)

On the other hand, Defendant's expert concluded that "there is a degree of scientific certainty indicating that the questioned" Betty Shaw and Clarence Shaw signatures were written by the known writers. (Br. in Opp. to Pls.' Mot. for Partial Summ.J., App. A.)

As discussed below, the identity of the maker of the signature on the June 1987 Right To Rescind is not pertinent to the Court's decision because the failure to provide the accurate date of rescission on that form, as well as the failure to provide any notice of the Right to Rescind the September 1987, transaction, clearly violate TILA.

4. An expert retained by the Plaintiffs concluded that if the work had been properly completed, a fair price would range from $9,720 to $13,800. However, the expert concluded that the defective condition of the work renders its value to be between $5,280 to $6,630. Exh. 8 at p. 2.

5. Federal failed to assert any opposition to the Plaintiff's request for summary judgment on Count 6.

which result in delay and expense, by promptly disposing of any actions in which there is no genuine issue of material fact. *Tomalewski v. State Farm Life Ins. Co.*, 494 F.2d 882, 884 (3d Cir.1974). Because it is such a "drastic remedy," it is not to be granted liberally. *Id.* (cited with approval in *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1981)). Summary Judgment is appropriate only when there is no genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

In resolving a motion for summary judgment, the Court must resolve all factual disputes, all doubts as to the existence of genuine issues of material fact, and any inferences that may be drawn from underlying facts, against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Chirinos de Alvarez v. Creole Petroleum Corp.*, 613 F.2d 1240, 1244 (3d Cir. 1980); *In re Hart*, 130 B.R. 817, 822 (Bankr. N.D.Ind.1991); (such inferences must be justifiable); *In re Windsor Communications Group, Inc.*, 68 B.R. 1007, 1010 (E.D.Pa. 1986).

Initially, the party moving for summary judgment has the burden of establishing the nonexistence of any "genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c); *Fairbanks Morse & Co. v. Consolidated Fisheries Co.*, 190 F.2d 817, 824 (3d Cir.1951). Then, the nonmoving party must "go beyond the pleadings" and, by way of affidavits, " 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2553 (quoting Fed. R.Civ.P. 56(e)); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *Hart*, 130 B.R. at 822 (party opposing summary judgment may not defeat the motion by merely relying on its pleadings, but must produce significant probative evidence). The evidence produced by the nonmoving party to show the existence of a genuine issue must be of sufficient quantum and quality to allow a rational and fair minded fact finder to return a verdict in favor of the nonmovant, bearing in mind the applicable standard of proof that would apply at the trial on the merits. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial," and summary judgment should be granted. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356 (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)).

*Liability of Federal as an Assignee*

█ The Shaws have requested summary judgment as to Count 1 of the Complaint which asserts that Federal is liable as an assignee of Statewide. In its Answer to the Complaint, Federal admitted that it is the assignee of Statewide. (Ex. 4 at 2.) Nevertheless, Federal asserts that although assignees are generally liable for defenses asserted by obligors, in this instance, application of equitable principles should result in no liability by Federal. Federal bases this argument on its claim that its representative not only confirmed with the Shaws the amount of the contract, the monthly payments, and the date of the first payment, but also that the work was satisfactory. Federal also stresses that the Shaws made forty payments. From the foregoing, Federal concludes that the Shaws did not timely make known to it any dissatisfaction with Statewide's work, and they should not now be heard to complain. These facts, however, do not eliminate the liability that Federal must shoulder as an assignee for its failure to disclose to the Shaws their right to rescind.

Federal's role in facilitating the financing for the Shaws warrants the imposition of liability on Federal as an assignee. It appears that Federal regularly financed home improvement loans for Statewide. The President of Federal, Anthony Accavallo, stated in his deposition that Federal financed approximately eighty home repair deals per year for Statewide. (Accavallo Dep. at 8.) Thus, Federal's familiarity with the home improvement business and home improvement loans is readily inferred. In the Shaw

transaction, Federal was instrumental in obtaining financing for the home repair contract. As described above, Federal did credit searches, title searches, secured an ultimate lender, and authorized the commencement of repairs. Moreover, Federal had in its possession all of the documents pertinent to this transaction, including the contracts and a mortgage bearing questionable dates, and only one Right of Rescission which contained the wrong rescission date.

Additionally, the contract dated June 15, 1987, on Federal's form number 1083 contains the following clause:

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF.

(Ex. 4 at 1.)[6]

As a result of the foregoing, summary judgment is granted as to Count 1 holding Federal liable as an assignee.

*The Truth in Lending Act, 15 U.S.C. § 1601 et seq.*

■ The Truth in Lending Act ("TILA") was enacted "to protect consumers' choice through full disclosure and to guard against the divergent and at times fraudulent practices stemming from uninformed use of credit." *King v. California*, 784 F.2d 910, 915 (9th Cir.1986), *cert. denied*, 484 U.S. 802, 108 S.Ct. 47, 98 L.Ed.2d 11, *reh'g denied*, 484 U.S. 971, 108 S.Ct. 474, 98 L.Ed.2d 412 (1987), *appeal dismissed*, 484 U.S. 802, 108 S.Ct. 47, 98 L.Ed.2d 11 (1987). By imposing a series of disclosure requirements, TILA promotes consistent and fair treatment of unsophisticated borrowers. *Parker v. De Kalb Chrysler Plymouth*, 673 F.2d 1178 (11th Cir.1982) (failure by the lender to disclose information about the borrower's rights under TILA is a violation of the Act). Because the provisions contained in TILA are designed to be remedial in nature, they are to be construed broadly and liberally in favor of consumers. *Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 896, 898 (3d Cir. 1990); *Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037, 1040 (6th Cir.1984); *Littlefield v. Walt Flanagan & Co.*, 498 F.2d 1133 (10th Cir.1974) (the prevention of "unscrupulous and predatory creditor practices" is remedial).

One such required disclosure is the obligation to notify consumers of their unequivocal right to rescind a transaction within three business days of the consummation of the transaction. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(b)(2) and (b)(5). "If the required notice [of the right to rescind] or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation...." 12 C.F.R. § 226.23(a)(3); *See also*, 15 U.S.C. § 1635(f); *Curry v. Fidelity Consumer Discount Co.*, 656 F.Supp. 1129, 1131 (E.D.Pa.1987) (preventing the consumers from being aware of the rescission period gives the consumer the right to rescind any time within three years). Further, an error in the Notice of the Right to Rescind, such as inclusion of the wrong rescission date, is a violation of TILA. 15 U.S.C. § 1635(a); *In re Kenderdine*, 118 B.R. 258, 263 (Bankr. E.D.Pa.1990); 12 C.F.R. § 226.23(b)(5).

■ Failure to comply with all of the disclosure requirements may subject the creditor to a multitude of penalties including the right to rescind a transaction, elimination of finance charges and civil penalties, actual damages, statutory damages, attorney fees and costs. 15 U.S.C. §§ 1635, 1640. However, additional liability is not imposed for multiple violations or multiple violators. 15 U.S.C. § 1640(g); *In re Steinbrecher*, 110 B.R. 155, 162 (Bankr.E.D.Pa.1990).

*Rescission Pursuant to 15 U.S.C. § 1635*

■ The Debtors contend that Federal's violation of the TILA gives them the right to

---

**6.** Such clause is in accordance with the requirements of 16 C.F.R. 433.2. Similarly, N.J.S.A. 17:16C–64.1 also provides:

No home repair contract shall contain any provision relieving the holder, or assignee, from liability for any civil remedy sounding in contract which the owner may have against the home repair instrument executed in connection therewith.

rescind the contract pursuant to 15 U.S.C. § 1635(a) and (f).

Section 1635(a), (b) and (f) governing rescission, provide in pertinent part as follows:

(a) [I]n the case of any consumer credit transaction ... in which a security interest ... acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later ...

(b) When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance charge or other charge, and any security interest given by the obligor ... becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money ... and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value ... The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

.  .  .  .  .

(f) An obligor's right of rescission shall expire three years after the date of consummation of the transaction ... *notwithstanding the fact that the information and forms required under this section or any*

*other disclosures required under this part have not been delivered to the obligor....*

15 U.S.C. § 1635(a)(b) and (f) (emphasis added). Thus, pursuant to the plain language of the statute, even though Federal did not comply with the disclosure requirements, the Shaws' right to rescind the transaction expired three years subsequent to the transaction.[7] The Shaws did not provide Federal with the notice of rescission until June 23, 1992, clearly beyond the three year statute of limitations provided by 15 U.S.C. § 1635(f). Nevertheless, the Shaws urge that the Defendant's intentional and fraudulent concealment of documents permits the equitable tolling of the statute of limitation.

In this Court's view, the statutory language of section 1635(f) governing actions for rescission, unlike the language of section 1640, governing damages, is much more constrained and by its terms does not permit enlargement of its limitation period. The very language of the statute encompasses both willful and negligent lack of disclosure. To find equitable tolling appropriate, the Court would have to ignore the plain terms of section 1635(f). Other courts which have addressed the application of the equitable tolling doctrine to actions under TILA have tolled the time period for actions for damages, but they have not done so with respect to rescission. *King*, 784 F.2d at 913 (three year statute of limitation is absolute). In accordance with the foregoing analysis, the Shaws may not affirmatively assert a rescission cause of action and summary judgment is denied as to Count 5.

*Rescission by Way of Recoupment*

"[R]ecoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded." *In re Smith*, 737 F.2d 1549, 1553 (11th Cir.1984) (quoting *Bull v. United States*, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935)). Accordingly, the following elements must be established for an action to proceed under a theory of recoupment: "(1) the TILA violation and the creditor's debt

7. Regardless of whether the transaction was deemed to have occurred in June, 1987, September, 1987, or arguably December, 1987—upon the Shaws' receipt of a copy of the mortgage and approval of financing for the September transaction—the three year statute of limitations has nevertheless expired.

claim arose from the same transaction, (2) [the debtor] is asserting her claim as a defense, and (3) the 'main action' is timely." *Smith,* 737 F.2d at 1553.

In the present case, Federal filed a proof of claim on January 14, 1992, based on a secured claim for unpaid principal and interest owed by the Shaws as a result of the June 15, 1987 note and mortgage. The Shaws subsequently filed this adversary proceeding to cancel the mortgage held by Federal and for other relief based on the same transaction. Thus, since the adversary proceeding is commenced in response to the timely filed proof of claim, the action may be based on recoupment.

■ Ample support exists for the Debtor's argument that rescission is available as a recoupment remedy. For instance, in *Dawe v. Merchants Mortg. and Trust Corp.,* 683 P.2d 796 (Colo.1984), *on appeal after remand,* 754 P.2d 418 (Colo.Ct.App.1987), the assignee of a note brought an action against the debtors. In turn, the debtors sent a notice of rescission based on a disclosure which was defective due to a misstatement of the rescission date. Despite the violation, the trial court granted the assignee's motion for summary judgement on the basis that the debtors' action was time barred. The trial court rejected the debtors' arguments that the action was one of recoupment because it sought "a penalty as relief from an independent wrong."

The Court of Appeals affirmed and the Supreme Court of Colorado reversed finding that the action was one of recoupment. The Supreme Court explained that "[r]ecoupment which arises out of and is connected with the transaction upon which the original action is brought survives for as long as the cause of action upon the note exists." *Id.* at 799.

Additionally, in *Community Nat'l Bank & Trust Co. of NY v. McClammy,* 138 A.D.2d 339, 525 N.Y.S.2d 629 (N.Y.App. Div. 2 Dept. 1988), the bank brought a foreclosure action against the defendant. In response, the defendant moved to dismiss on the basis that the mortgage was obtained by fraud. The trial court granted the bank's motion for summary judgment and denied defendant's motion to dismiss. The Appellate Division reversed the trial court's granting of summary judgment and stated that a counterclaim asserted after the expiration of the statute of limitations is not barred.

Finally, in *Federal Deposit Insurance Corp. v. Ablin,* 177 Ill.App.3d 390, 126 Ill. Dec. 694, 532 N.E.2d 379 (1988), the FDIC, as a receiver for a bank, brought a foreclosure action against the defendants. Although three years had passed and the statute of limitations had expired, Defendants counterclaimed and asserted that they were entitled to rescind the transaction because they never received the requisite TILA disclosures. Plaintiffs then argued that the absence of recoupment in the rescission statute, § 1635, and its presence in the damage statute, § 1640, supports the conclusion that rescission is not available as a recoupment remedy. Despite this difference, the court followed the reasoning announced in *Dawe* and permitted rescission by way of recoupment.

Based on the foregoing authority, the Court finds that the remedy of rescission is available under a theory of recoupment. As a result of Federal's violations of TILA, the Shaws are entitled to rescind the mortgage. In accordance with section 1635(b), Federal must terminate the security interest. Further, rescission eliminates the Shaws' liability for any finance charges. The Shaws, however, remain liable for the reasonable value of the replacement windows and siding, which can only be determined at an evidentiary hearing. Thus, summary judgment as to liability only is granted on Count 8.

*Recovery of Damages Pursuant to 15 U.S.C. § 1640*

In addition to rescission of the mortgage, the Shaws can also recover statutory penalties under a recoupment theory. "The right of a debtor in bankruptcy to invoke the doctrine of recoupment, as authorized by 15 U.S.C. § 1640(e), to reduce a secured proof of claim of a mortgage lender by the amount of statutory TILA damages has been recognized again and again." *Kenderdine,* 118 B.R. at 263 (citations omitted) (debtor bringing adversary complaint can recoup damages and attorney fees and costs); *In re Norris,*

138 B.R. 467, 470–71 (E.D.Pa.1992) (when a debtor objects to a proof of claim and raises a violation of TILA as recoupment, it is not an affirmative action); *In re Brown,* 106 B.R. 852 (Bankr.E.D.Pa.1989) (debtor asserting adversary complaint permitted recovery of damages under recoupment theory); *In re Celona,* 90 B.R. 104, 106 (Bankr.E.D.Pa. 1988), *aff'd sub nom. Celona v. Equitable Nat'l Bank,* 98 B.R. 705 (E.D.Pa.1989) (debtor filing adversary complaint recovers damages under recoupment theory and attorney fees and costs); *In re Tucker,* 74 B.R. 923 (Bankr.E.D.Pa.1987) (debtor filing adversary complaint can recover damages and attorney fees and costs under recoupment theory).

Similarly, the Shaws are entitled to recoup the following civil damages pursuant to § 1640(a)(1), (a)(2)(A)(i) and (a)(3): actual damages to be determined after a evidentiary hearing; a maximum statutory penalty of $1,000.00; and reasonable attorney fees and costs payable to the Debtors' counsel.

### CONCLUSION

Summary judgment is granted as to the following counts:

Count 1 which holds Federal liable for claims and defenses as the assignee from the contractor.

Count 8 requesting rescission, liability for statutory damages and actual damages which shall be the subject of trial, and reasonable attorney fees and costs pursuant to 15 U.S.C. § 1640.

Count 9 disallowing Federal's proof of claim insofar as it asserts a secured claim.

Summary judgment is denied as to the following counts:

Count 5 requesting equitable rescission of the contract.

Because the foregoing counts accord the Plaintiffs full relief, the Court does not reach a decision with respect to whether summary judgment is appropriate on Counts 4 or 6, respectively, the New Jersey Retail Installment Sales Act or the New Jersey Consumer Fraud Act.

Because factual issues remain with regard to the reasonable value of the home improve-ment, the amount of the finance charges involved in the transaction, and whether the Shaws suffered actual damages, the Court directs that an evidentiary hearing will be held as to those matters.