In re Jeffrey T. BARSKY, Debtor.

Jeffrey T. BARSKY, Plaintiff,

v.

COMMERCIAL CREDIT
CORPORATION,
Defendant.

Bankruptcy No. 97–13568DAS.

Adversary No. 97–0667DAS.

United States Bankruptcy Court,
E.D. Pennsylvania.

July 15, 1997.

Joseph Diorio, Philadelphia, PA, for Debtor.

Andrew L. Markowitz, Lahaska, PA, for Commercial Credit Corp.

Edward Sparkman, Philadelphia, PA, Standing Chapter 13 Trustee.

*OPINION*

DAVID A. SCHOLL, Chief Judge.

*A. INTRODUCTION*

The instant adversary proceeding ("the Proceeding") invokes the right of JEFFREY T. BARSKY ("the Debtor") to rescind a mortgage loan transaction pursuant to the federal Truth–in–Lending Act, 15 U.S.C. § 1601, *et seq.* ("the TILA"), in order to, *inter alia,* defend a motion by the assignee of the mortgage, COMMERCIAL CREDIT CORPORATION ("Commercial"), for relief from the automatic stay ("the Motion"). The rescission was effected more than three years after the underlying loan transaction, in apparent contradiction with 15 U.S.C. § 1635(f). We accept the Debtor's argument that § 1635(f) does not bar the instant recoupment-like use of TILA rescission, but we rule against the Debtor because he has not identified a material TILA violation entitling him to rescission.

*B. PROCEDURAL AND FACTUAL HISTORY*

The Debtor filed the underlying individual Chapter 13 bankruptcy case on March 26, 1997. On April 28, 1997, Commercial filed the Motion and, after two continuances, it came before us for a hearing on June 17, 1997. The Proceeding was filed on May 29, 1997. It was initially listed for trial on July 8, 1997.

On June 17, 1997, Commercial declined the Debtor's request, on the ground that the resolution of the remaining vitality of the underlying mortgage would be at issue in the

Proceeding and would be decisive of the Motion, to continue the Motion once again until July 8, 1997. We therefore accepted the loan documents offered by Commercial and took the Motion under advisement, but had not decided it as of July 8, 1997, when the Proceeding was listed for trial. On the latter date the parties presented us with a handwritten Stipulation of Facts ("the Stipulation") to constitute the record, which they promised to and did resubmit in typed form with opposing briefs by July 11, 1997. The parties argued that the resolution of the Proceeding would control the disposition of the Motion, *i.e.*, Commercial would be granted relief if the Debtor were unsuccessful in the Proceeding, but would be denied relief if the Debtor prevailed in the Proceeding.

The Stipulation provides that the Debtor and his apparently estranged nondebtor wife Barbara ("the Borrowers") and Money–Line Mortgage ("Money–Line"), Commercial's assignor, entered into a loan transaction whereby Money–Line advanced $128,275.51 to the Borrowers and obtained a mortgage on their home at 100 Boncouer Road, Cheltenham, Pennsylvania ("the Home"), on June 10, 1991. Since Money–Line took a security interest against the Borrowers' residential real estate in the transaction, it was obliged to provide them with a right to rescind the transaction within three days of the Borrowers' having received delivery of a proper notice of their right to rescind and all "material disclosures" required under the TILA. 15 U.S.C. § 1635(a).

The balance owed on the loan was $135,-892.13, as of May 19, 1997. The Home is valued at $130,000. The Borrowers last made a payment on the loan obligation on April 26, 1996, and, noting that the Debtor's Schedules indicate that he now lives at an address other than the Home, suggesting a separation of the Borrowers, they have not indicated an ability nor an intention to make any further payments.

On January 6, 1997, the Debtor, by his counsel, sent a letter to Commercial's counsel rescinding the transaction due to "[t]he requirement that a broker place this obligation and other disclosure valuations." This denial

for a rescission was not honored by Commercial.

## C. DISCUSSION

### 1. THE DEBTOR RETAINS A RIGHT IN THE NATURE OF RECOUPMENT TO RESCIND THE UNDERLYING LOAN TRANSACTION AND UTILIZE A VALID TILA RESCISSION TO ATTACK COMMERCIAL'S SECURITY INTEREST.

The threshold issue to which the parties have devoted considerable attention is whether the Debtor may make any use of his purported rescission in light of 15 U.S.C. § 1635(f), which provides that

[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the [secured] property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required by this chapter have not been delivered to the obligor, . . .

The Debtor accurately points out that a number of recent decisions have concluded that, despite this seemingly absolute bar on claims based upon rescission effected more than three years after the secured loan transaction has been consummated, as in the case of the instant purported rescission, a rescission can be effected and utilized in a defensive, recoupment mode to defend against the secured party's efforts to foreclose on the security or to attack a proof of claim in bankruptcy, even though any affirmative claim for a rescission is barred. *See In re Botelho*, 195 B.R. 558, 564–68 (Bankr. D.Mass.1996); *In re Shaw*, 178 B.R. 380, 386–88 (Bankr.D.N.J.1994) (also holds that statutory damages in the nature of recoupment are recoverable); *Dawe v. Merchants Mortgage & Trust Corp.*, 683 P.2d 796, 799–800 (Colo.1984) (en banc); *Federal Deposit Ins. Corp. v. Ablin*, 177 Ill.App.3d 390, 395, 532 N.E.2d 379, 382, 126 Ill.Dec. 694, 696 (1988); and *Community Nat'l Bank & Trust Co. v. McClammy*, 138 A.D.2d 339, 341, 525 N.Y.S.2d 629, 631–32 (1988). *But see Beach v. Great Western Bank*, 692 So.2d 146, 150–53 (Fla.1997).

■ Although we expressed skepticism at the Debtor's contentions on of this issue at trial, we now must agree that the weight of authority, as well as reason, supports the rule that a rescission can be asserted defensively even if it is effected after the § 1635(f) three-year period has run. This result is similar to the interpretation of 15 U.S.C. § 1640(e) allowing TILA damages in the nature of recoupment to reduce bankruptcy claims, even when the TILA violations are asserted after the one-year statute of limitations for raising such claims affirmatively has run. *See, e.g., In re Norris,* 138 B.R. 467, 470–71 (E.D.Pa.1992); *In re Kenderdine,* 118 B.R. 258, 263 (Bankr.E.D.Pa.1990); *In re Dangler,* 75 B.R. 931, 935–37 (Bankr.E.D.Pa. 1987); *In re Hanna,* 31 B.R. 424, 425–26 (Bankr.E.D.Pa.1983); and *Household Consumer Discount Co. v. Vespaziani,* 490 Pa. 209, 216–24, 415 A.2d 689, 693–97 (1980). Although § 1640(e) presently expressly allows recoupment, it must be recalled that the early decisions were rendered under the prior version of § 1640(e), which did not expressly authorize defensive use of TILA claims in the nature of recoupment. *See Dangler, supra,* 75 B.R. at 936; *Hanna, supra,* 31 B.R. at 425; and *Vespaziani, supra,* 490 Pa. at 212, 217–24, 415 A.2d at 691, 693–97.

Whether we would go as far as the *Shaw* decision, and allow statutory damages arising from a rescission as well as the rescission itself to be asserted in the nature of recoupment, *see* 178 B.R. at 387–88, is an issue which we need not reach, in light of our ultimate disposition here that the Debtor has no right to rescind the particular instant transaction. *See* pages 685–687 *infra.* We do note that the only contrary decision to this line of cases, *i.e., Beach,* distinguished *Dawe* on the ground that the equities in favor of the *Dawe* plaintiff were greater than those in favor of the *Beach* plaintiff. *See* 692 So.2d at 150.

The potential inequity of a strict reading of § 1635(f) is that a creditor may take a security interest in a borrower's residence and provide such poor disclosure of this fact that the borrower is incapable of discovering the security interest taken until after the three-

year time period of § 1635(f) has expired. Thus, a strict reading of § 1635(f) would present an incentive to creditors to provide the worst possible disclosure of such a security interest, thereby hopefully concealing same entirely for the three-year period. This reading of § 1635(f) would support a policy contrary to the most basic underlying purpose of the TILA of requiring creditors to provide the best possible disclosure of credit terms to their customers. *See Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 363–65, 377, 93 S.Ct. 1652, 1657–59, 1664–65, 36 L.Ed.2d 318 (1973); and *In re Russell,* 72 B.R. 855, 861 (Bankr.E.D.Pa. 1987). In all fairness to the *Beach* court, its decision can probably be read as pointing to a different result and allowing a debtor to raise certain TILA rescission claims in the nature of recoupment after the normal § 1635(f) three-year limitations period where the equities so dictate.

In any event, we hold that § 1635(f) does not bar the Debtor from asserting TILA rescission claims under §§ 1635(a) and (b), nor from defending the Motion on the ground that Commercial's security interest may be avoided under § 1635(b).

2. *THE DEBTOR NEVERTHELESS CANNOT RESCIND THE INSTANT LOAN TRANSACTION BECAUSE THE DISCLOSURE VIOLATION OF THE TILA ASSERTED BY HIM IS NOT CLASSIFIED AS A REQUISITE "MATERIAL DISCLOSURE."*

The flaw in the Debtor's argument arises from the nature of the TILA violation which he asserts that Money–Line committed in the instant transaction. Despite the reference in his rescission letter to improper broker involvement in the loan, *compare Russell, supra,* 72 B.R. at 861–64, and the assertion in the Complaint of a failure to properly disclose the finance charges and annual percentage rate charged to the Borrowers in the transaction, the only TILA violation claimed by the Debtor in his post-trial submission is a violation of 15 U.S.C. § 1638(a)(9), which requires that a creditor accurately disclose any security interests taken by it against the borrower in a credit transaction. More spe-

cifically, the Debtor points to the fact that the mortgage documents provide for Money-Line's obtaining a security interest in escrow advances by the Borrowers to pay for taxes, assessments, and leasehold or ground rent payments; yearly hazard insurance; and yearly mortgage payment insurance. This security interest is not disclosed on the TILA disclosure statement provided to the Debtor, which only references a security interest taken "in Real Estate."

As support for this argument that Money-Line's taking of a security interest in the escrow funds constitutes a sufficiently significant security interest to merit its separate disclosure, the Debtor first cites to two cases holding that a mortgage document which includes security interests in personalty such as appliances and household fixtures in a home mortgage document takes such a secured claim out of the 11 U.S.C. § 1322(b)(2) category of "a claim secured only by a security interest in real property that is the debtors principal residence," *In re Hammond*, 27 F.3d 52, 57 (3d Cir.1994) (security interest in appliances and furnishings, but court states that "creditor's additional security interest in personalty or *escrow accounts and the like* pay a price [of loss of § 1322(b)(2) protection]" (emphasis added)); and *In re Pinto*, 191 B.R. 610, 613 (Bankr.D.N.J.1996) (security interest in rents and insurance proceeds). Next, he cites to cases holding that a failure to disclose such a security interest in appliances and furnishings in the mortgaged premises gives rise to a non-rescission TILA recoupment recovery against a mortgagee's claim. *Norris, supra,* 138 B.R. at 472–73; *Dangler, supra,* 75 B.R. at 934; and *In re Cervantes,* 67 B.R. 816, 819 (Bankr.E.D.Pa. 1986).

Commercial argues that certain cases interpreting § 1322(b)(2) have held security in escrow funds to be insufficient to take a security interest out of the scope of § 1322(b)(2), notably *In re Rosen*, 208 B.R. 345, 351–54 (D.N.J.1997); *In re Hirsch*, 166 B.R. 248, 251–55 (E.D.Pa.1994) (addresses security interests in appliances and furniture and rents and profits, not escrow accounts); and *In re Wilkinson*, 189 B.R. 327 (Bankr.

E.D.Pa.1995) (discusses a security interest in rents and profits, not escrow accounts).

This court has articulated its viewpoint that a mortgagee's taking a security interest in "rents and profits," the issue raised in *Rosen, supra,* 208 B.R. at 349–50; *Hirsch, supra;* and *Wilkinson, supra,* does not take a mortgage out of the scope of § 1322(b)(2) because such a conclusion is inconsistent with the controlling precedent of *Sapos v. Provident Institution of Savings,* 967 F.2d 918, 925–26 (3d Cir.1992). *See In re Bernhardt,* 186 B.R. 889 (Bankr.E.D.Pa.1995); and *In re Gelletich,* 167 B.R. 370, 374–77 (Bankr. E.D.Pa.1994). We have not discussed the "escrow account" issue in isolation although we held that such a security interest was "alone ... enough to take the mortgage out of the realm of § 1322(b)(2)" in *In re Klein,* 106 B.R. 396, 400 (Bankr.E.D.Pa.1989). The dictum in *Hammond* would also appear sufficiently clear to support the Borrowers' contention that the instant mortgage is not within the scope of § 1322(b)(2) protection.

However, we do not believe that these cases, which have no connection with the TILA and involve different policies under the Bankruptcy Code, have much, if any, bearing in the decision at hand. Also, we note that a security interest in specific personalty unconnected to the realty, as was at issue in *Hammond, Dangler,* and an unreported decision by Judge Sigmund cited by the Debtor, is more readily classifiable as an additional security interest to the mortgage itself than escrow advances pursuant to the mortgage, as are in issue here.

In connection with the latter issue, Commercial argues, with more force, that a security interest in escrow advances is specifically classified as an "incidental interest" in realty which need not be disclosed at all, pursuant to the Official Staff Commentary to Regulation Z, § 2(a)(25) 3. Such Commentary is entitled to "deference" in interpreting the TILA. *See Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 559–60, 565, 100 S.Ct. 790, 793–94, 796–97, 63 L.Ed.2d 22 (1980); *Ortiz v. Rental Management, Inc.,* 65 F.3d 335, 339–40 (3d Cir.1995); and *In re Wright,* 133 B.R. 704, 708 (E.D.Pa.1991).

However, putting aside the close question of whether Money–Line was obliged to disclose the security interest which it took in the Debtor's escrow advances, the matters before us can rather easily be resolved on the issue of whether any TILA disclosure violation by Money–Line in the disclosure of its security interest, under § 1638(a)(9), is a "material disclosure" violation of TILA which can trigger rescission rights. The TILA and its effecting Regulation Z not only recite that only failure to provide a "material disclosure" will trigger a right to rescission, 15 U.S.C. § 1635(a), 12 C.F.R. § 226.23(a)(3), but also they specifically define "material disclosures" as follows:

The term *"material disclosures"* means the disclosure, as required by this title, of the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, and the due dates or periods of payments scheduled to repay the indebtedness.

15 U.S.C. § 1602(u); and 12 C.F.R. § 226.23(a)(3) n. 48. *See Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 896, 904, *aff'd in part & superseded in part,* 898 F.2d 907 (3d Cir.1990); *In re Michel,* 140 B.R. 92, 100 (Bankr.E.D.Pa.1992); and *In re Steinbrecher,* 110 B.R. 155, 161 (Bankr.E.D.Pa. 1990). *Compare In re Apaydin,* 201 B.R. 716, 722–23 (Bankr.E.D.Pa.1996) (failure to deliver a proper notice of rescission, a violation which is not in issue here, triggers a rescission, per 15 U.S.C. § 1635(b) and 12 C.F.R. § 2276.29(a)(3)). A violation of § 1638(a)(9) in the disclosure of the security interests taken by the creditor in a consumer credit transaction is conspicuously absent from this recitation of "material disclosures."

The only disclosure violation cited by the Debtor as a justification for his recission of the instant loan transaction is the failure of Money–Line to accurately disclose the security interest taken by it, as required by 15 U.S.C. § 1638(a)(9). Since such a disclosure violation is not within the scope of "material disclosures" which, if not provided, will trigger rescission rights under § 1635(f), the Debtor's efforts to rescind this transaction must fail.

Although we alerted both parties' counsel to our perceived significance of the issue of the Debtor's not designating "material disclosures" which were allegedly not provided, in a Supplemental Order of July 9, 1997, to our briefing order of July 8, 1997, neither party addresses the issue in their briefs of July 11, 1997. We do note that the Supplemental Order misreferenced § 1602(u) as § 1602(s), and miscited 12 C.F.R. § 226.23(a)(3) n. 48 as n. 2. We regret these errors, but we do not believe that they were serious enough errors to have rendered our communication to the parties of our perceived significance of the issue unclear, nor to have precluded the parties from locating the correct provisions of the statute and Regulations. In any event, we render our decision contrary to the Debtor on this basis because this is by far the clearest deficiency in the Debtor's argument.

## D. CONCLUSION

An order will be entered rendering judgment in the Proceeding in favor of Commercial, and, in that light, granting the Motion.